(June 23, 1906.)

# EUREKA MINING, SMELTING AND POWER COMPANY et al., Appellants, v. LEWISTON NAVIGATION COMPANY et al., Respondents.

## [86 Pac. 49.]

APPOINTMENT OF RECEIVER PENDING APPEAL—WASTE—FAILURE TO INSURE—REMOVAL OF PROPERTY FROM JURISDICTION.

1. Where a mortgage provides that the mortgagor shall keep the property insured, and that in case he fails to do so the mortgagee may insure, and that all sums paid by the mortgagee for insurance shall become a part of the mortgage debt and be secured by the mortgage lien, a failure to insure by the mortgagor will not amount to such waste of the security as to authorize the appointment of a receiver to take charge of the property.

2. Where A takes a mortgage on a boat that is plying on an interstate stream in such manner that its use in navigating such stream must necessarily take it beyond the jurisdiction of the state in which the mortgage was executed, and it is stipulated in the mortgage that the mortgagor shall not remove the "vessel beyond the limits of the United States," a removal beyond the jurisdiction of the state and its use in navigation of a portion of the same stream where it is no more dangerous or perilous will not constitute grounds for the appointment of a receiver to take charge of the property, where it appears that the vessel is in charge of a competent and skillful captain and crew.

3. Where a mortgage provides that the mortgagee shall insure a boat which it is understood shall ply on certain designated waters, and he fails to do so for the reason that the risk is so great on a vessel plying on those waters that insurance cannot be obtained, the failure of the mortgagor to insure will not of itself warrant the appointment of a receiver for such property.

(Syllabus by the court.)

ORIGINAL application for appointment of a receiver pending appeal. *Application denied.*

John O. Bender and K. I. Perky, for Applicant.

It was a want of good faith on the part of the mortgagors to neglect to pay the taxes and insurance upon the property,

and yet remain in possession and appropriate all the profits of the use of the estate to their own purposes. (*Winkler v. Madgeburg*, 100 Wis. 421, 76 N. W. 332, 335.)

A receiver will be appointed where there is even imminent danger of waste to realty; it follows that where actual waste is being perpetrated or a continued neglect to properly preserve the mortgaged personal property exists, like a failure to keep it insured, a receiver should be appointed. (*Kelly v. Steele*, 9 Idaho, 141, 72 Pac. 887.)

The plaintiffs are entitled to a receiver on this ground alone, that the property is in danger of being removed, and it is immaterial whether the property be sufficient to discharge the mortgage debt; it is only necessary to add to the statutory ground that the condition of the mortgage has not been performed. (*Clark v. Brown*, 119 Fed. 132; High on Receivers, par. 9; *State v. District Court*, 22 Mont. 241, 56 Pac. 281; *Loaiza v. Levy*, 85 Cal. 11, 20 Am. St. Rep. 197, 24 Pac. 707, 9 L. R. A. 376.)

A receiver might not be appointed merely because the mortgagor failed to provide insurance, but the property is in very great danger of being lost, and there is no other property out of which to satisfy the indebtedness. The fact that the property covered by the mortgage is personalty, and not realty, should not be lost sight of. (*Jones v. Quayle*, 3 Idaho, 640, 32 Pac. 1134; Alderson on Receivers, sec. 422; 17 Ency. of Pl. & Pr., 731 et seq., and notes and cases therein cited.)

A receiver will be appointed where there is fraud or bad faith on the mortgagor's part in the management of the property, as in appropriating rents and profits to other purposes than in keeping down the interest on the encumbrances. (2 Jones on Mortgages, sec. 1533; Smith on Receivership, p. 278.)

Where the mortgagor refused to pay interest and taxes and so forth on the mortgaged property, and the plaintiffs, upon discovering such facts, applied to the trustee to take action, and the trustee had failed and neglected to take any steps, a case was made for the appointment of a receiver. (*Putnam v. Jacksonville etc. R. Co.*, 61 Fed. 440.)

It is held in *Sacramento etc. R. R. Co. v. Superior Court of San Francisco,* 55 Cal. 456, under a statute exactly like ours, that a receiver may be appointed in an action to enforce the specific performance of the terms and conditions of a mortgage.

This court has jurisdiction over the subject matter of this suit. (*Bogart v. The Steamboat John Jay,* 17 How. 399, 15 L. ed. 95; *Schuchardt v. Barbage,* 19 How. 239, 15 L. ed. 625; *Rood v. Reartt (The Lottawanna),* 21 Wall. 583, 608, 22 L. ed. 654; *Britton* v. *The Venture,* 21 Fed. 928.) This court has jurisdiction to appoint a receiver, although the property is beyond the jurisdiction of Idaho. (High on Receivers, 3d ed., p. 43; *Bayne* v. *Brewer Pottery Co.,* 82 Fed. 394; Alderson on Receivers, sec. 428.) And to compel the defendants to bring the property within the state. (5 Rose's Notes on U. S. Reports, p. 474, and collection of cases.)

C. H. Lingenfelter, *contra.*

When personal property, which at the time is situated in the given state, is mortgaged by the owner, and the mortgage is duly executed and recorded in the mode required by law, so as to create a valid lien, the lien remains good and effectual, although the property is removed to another state, either with or without the consent of the mortgagee, and although the mortgage is not rendered in the state to which the removal is made; the mortgage lien is given effect, however, in the state to which the property is removed solely by virtue of the doctrine of comity. (*Shepard v. Hynes,* 104 Fed. 449, 45 L. R. A. 271, 52 L. R. A. 678.)

It is error to appoint a receiver in any of the cases mentioned in section 4329, Revised Statutes of Idaho, where the equities of the complaint are fully denied by the answer, and the evidence introduced by plaintiff on the hearing of the application for the appointment of such receiver is fully met and overcome by counter-evidence introduced by the defendant. (*Sweeney v. Mayhew,* 6 Idaho, 455, 56 Pac. 85; High on Receivers, 3d ed., sec. 24; *Crombie v. Order of Solon,*

157 Pa. St. 588, 27 Atl. 710; *Buchannan v. Comstock,* 57 Barb. 568.)

In this proceeding the equities of the plaintiff's complaint are fully denied by the affidavit, which takes the place of the answer. (17 Ency. of Pl. & Pr. 741, and cases cited; *White House v. Point Defiance R. R. Co.,* 9 Wash. 558, 38 Pac. 152; *National Park Bank v. Godard,* 131 N. Y. 494, 30 N. E. 566; *Williamson v. Monroe,* 3 Cal. 383.)

It may be stated as a general rule that a receiver of mortgaged property, or of the rents and profits thereof, will never be appointed where the security is adequate and the receivership is not necessary for its preservation. (23 Ency. of Law, 2d ed., p. 1028.)

When a party is clothed with title and possession such as are conferred by a lease in writing, and is in the enjoyment of rights apparently legal, a receiver will not be appointed unless under urgent and peculiar circumstances. (*Chicago Oil etc. Co. v. United States Petroleum Co.,* 57 Pa. St. 83, 91.)

AILSHIE, J.—This is an original application made in this court for the appointment of a receiver pending an appeal and determination thereof. The original action out of which the application arises was commenced in the district court in and for Nez Perce county, for the foreclosure of a mortgage for $10,000 on a steamboat plying on the Snake river, known and registered as the "Mountain Gem." The plaintiffs applied for the appointment of a receiver pending the action, and the application was granted by the district judge, and a receiver was accordingly appointed. Thereafter, the defendant, C. F. Allen, applied to the court for a dissolution of the order and discharge of the receiver, and after a hearing and the submission of various affidavits on behalf of both plaintiffs and defendants, the district judge made and entered an order discharging the receiver. The plaintiffs immediately filed and served their notice of appeal to the supreme court, and executed and filed an undertaking on such appeal. They thereafter caused a certi-

fied copy of the papers and files used on the hearing in the lower court to be filed in this court, and on that showing applied here for the appointment of a receiver pending the determination of the case on appeal. This application is made under section 9, article 5 of the constitution as construed in *Chemung Min. Co. v. Hanley,* 11 Idaho, 302, 81 Pac. 619. In that case it was said that: "This court has the power to appoint a receiver to act pending the litigation."

The material facts necessary to an understanding of the issues presented here are as follows: The plaintiff, Eureka Mining, Smelting and Power Company, is a Washington corporation engaged in mining operations on the upper Snake river and somewhere above Lewiston, while the defendant, Lewiston Navigation Company, is an Idaho corporation, with its principal place of business at Lewiston, organized and existing for the purpose of constructing and operating boats on the Snake river. The navigation company appears to have constructed the "Mountain Gem" at an expense of some $30,000; $10,000 of this sum was loaned to the navigation company by various parties as follows: By the Eureka Mining, Smelting and Power Company, $7,328; by the plaintiff H. M. Peterson, $500.00; by the plaintiff J. A. Husebye, $172, and the balance of $2,000 by the defendant C. F. Allen. On January 27, 1904, the navigation company executed and delivered to the defendant C. F. Allen four promissory notes for the total sum of $10,000, one for the sum of $7,328, one for $500, one for $172, and one for $2,000, and at the same time executed and delivered to and in favor of Allen a mortgage on the "Mountain Gem," apparently in conformity with maritime law, to secure the payment of these several notes. All of these notes were due and payable one year after date, and the mortgage contained the following stipulation: "But if default be made in such payments, or in any one of such payments, or if default be made in the prompt and faithful performance of any of the covenants herein contained, or if the said party of the second part shall at any time deem himself in danger of losing said debt, or any part thereof, by delaying the

collection thereon until the expiration of the time above limited for the payment thereof, or if the said party of the first part shall sell or attempt to sell said property or any part thereof, or if the same shall be levied upon or taken by virtue of any attachment or execution against said first party, or if said first party shall remove, or attempt to remove, said vessel beyond the limits of the United States, or if said first party shall suffer and permit said vessel to be run in debt to an amount exceeding in the aggregate the sum of —————— dollars, or if said first party shall negligently or willfully permit said property to waste, damage, or destruction, said party of the second part hereby authorized to take possession of said goods, chattels, and personal property at any time, wherever found, either before or after the expiration of the time aforesaid, and to sell and convey the same, or so much thereof as may be necessary, to satisfy the said debt, interest, and reasonable expenses, after first giving a notice of thirty days, to be given by publication in some newspaper published in the city of Lewiston, state of Idaho, and to retain the same out of the proceeds of such sale; the surplus (if any) to belong and to be returned to said party of the first part.'' It also contained a stipulation requiring the mortgagor to keep the property insured against fire and marine risks. All these notes, except the one for $2,000, were indorsed by Allen and delivered by him to the equitable owners thereof. At the same time the notes and mortgage were executed, and apparently concurrently therewith, the navigation company executed and delivered to the defendant Allen a lease on the ''Mountain Gem'' for a term of five years. This lease contains numerous provisions and stipulations, none of which have been considered especially important here except the following: ''The said lessee shall run said boat for the development of the upper Snake river country, and shall return same to the said lessor upon expiration of this lease, or upon its termination for any reason herein provided, in good condition; natural wear and tear excepted, excepting also damages or loss by fire, or contact with rocks, or other reasons beyond the control of said les-

see.'' The lessee, Allen, operated the boat on the Upper Snake river from the date of the execution of the lease until the twenty-fifth day of August, 1905, at which time the water became so low that it was impossible for the boat to run on the river above Lewiston, or even between Lewiston and Riparia. In the latter part of October, 1905, the boat appears to have been taken down the Snake river from Lewiston to what is commonly known in that section of the country as the lower river, where it has ever since been operated and was being operated at the time this action was commenced. While the lease was executed at the same time as the notes and mortgage, still the plaintiffs do not appear to have been parties to that instrument, although it is quite clearly established that they were, in fact, cognizant of its execution and of the contents thereof. They also knew, and have ever since known, that the defendant Allen was the lessee and in control of and operating this boat. It also appears that the lessee was to considerable expense in constructing piers and docks and in operating the boat, and operated the same at a continuous loss until after he removed it to the lower river. On the lower river he appears to have been running the boat at a profit. In the meanwhile no payment whatever was made by the mortgagor, the navigation company, or anyone else, on these several notes; neither did the company nor anyone else cause the boat to be insured. In fact it is stated in one of the affidavits on behalf of the plaintiffs ''that there is no insurance on said boat, and none can be had thereon as the risk is too great, and the rate of insurance thereon would be prohibitive.'' It will be remembered that the provisions of the mortgage required the mortgagor to keep the property insured. It would, however, appear self-evident that if the ''risk is too great'' and the rate of insurance too high for the mortgagees to procure insurance on the property, it would have been equally ''prohibitive'' on the mortgagor.

This application appears to be based on two propositions: (1) That the mortgaged property has been removed out of the jurisdiction of the court; (2) That the mortgaged prop-

erty is in danger of being destroyed on account of being operated in dangerous and perilous waters. It is contended by counsel for defendant that since the boat had already been removed from the jurisdiction of this state prior to the commencement of the action, that therefore the court could not appoint a receiver to take charge of the property on the ground that "it was about to be removed." The trial judge appears to have taken the same view of the case. We cannot agree with such a view as to the powers of a court of equity to appoint a receiver. While it is a well-recognized principle that a receiver appointed by the courts of one state has no standing, except by comity, in the courts of another state (note to *Straughan v. Hallwood,* 8 Am. St. Rep. 49), still it is quite equally as well established that where all the parties interested in the property and having control over it are personally present in court, the court may, and often should, appoint its receiver to take charge of the property, and may in that manner reach the property through orders made upon the person of the litigant. (Anderson on Receivers, sec. 428; High on Receivers, sec. 46; note to *Booth v. Clark,* 17 How. 322, 15 L. ed. 164; 5 Rose's U. S. Notes, p. 474.)

On the second ground urged by the petitioners it is contended that the failure to insure amounts to a neglect on the part of the mortgagor to preserve the property and is in effect waste. It is argued that the failure to pay taxes and the necessary insurance to preserve and protect the property amounts in equity to waste, and in support of this position we are cited to *Winkler v. Madgeburg,* 76 N. W. 332. In that case the court said: "The payment of taxes and the cost of insurance is necessary to preserve the property. Equity devolves it upon him who has the use. Not to pay them is waste." It should be observed that in that case the mortgagor was insolvent, and had made an assignment for the benefit of his creditors, and that it was considered very doubtful by the trial court if the property was sufficient to pay the mortgage debt. It also appeared that Madgeburg, the assignee for the benefit of creditors, was receiving the rents

and profits from the property and was failing to pay taxes and insurance. The facts of that case abundantly justify the conclusion reached by the court, but the case clearly did not require the court to go to the extent of holding that a failure to pay taxes and insurance amounted *per se* to waste. It should be noted that in the case at bar the mortgage authorizes the mortgagee to pay insurance in case the mortgagor failed to do so and charge the same up against the mortgagor as a part of the mortgage debt, for which the mortgagees would acquire a lien under their mortgage. Under such a state of facts a court would not be justified in saying that a failure to meet these requirements would amount to waste and justify the appointment of a receiver. On the other hand, they would undoubtedly be proper circumstances for the consideration of a court of equity in connection with such other facts as appeared in the Winkler-Madgeburg case.

Again, it is urged by counsel for plaintiffs that the property has been removed from the jurisdiction of the state, and is in great danger of being destroyed on the rocks in the lower Snake river, and it is argued that either of these facts is sufficient to justify the appointment of a receiver. In the first place it is a matter of which we take judicial notice that the Snake river does not enter the state of Idaho at any point in the northern division thereof, and that its nearest approach is to mark the western boundary of the state. The vessel could not ply on the Snake river above Lewiston without being as often in the jurisdiction of Washington as in Idaho. It could not ply on the river below Lewiston without passing into the state of Washington and entirely beyond the jurisdiction of this state. These facts were known to all of the parties at the time of the execution of the mortgage, and it was provided in the mortgage that the vessel should never be taken "beyond the limits of the United States," which was itself a recognition of the fact that it would necessarily have to be taken beyond the jurisdiction of Idaho. While the lease provided that the lessee should "run said boat for the development of the upper Snake river country,"

this was not a part of the mortgage contract, and was not a condition of the security given the creditors, and its violation, if its true intent has been violated, would not be a breach of the mortgage contract. We are forced to the conclusion that the removal of the vessel to the lower river, under the circumstances shown by these affidavits, was not such a violation of the terms of the contract as to justify the appointment of a receiver to take charge of the property. Now, as to the contention that the removal of the vessel to the lower river endangers its safety and threatens its loss and destruction. It is shown by the affidavits, and even in the absence of such a showing, we would be justified in taking notice of the fact, that the perils and dangers of navigation in the Snake river above Lewiston are greater than in the same stream below Lewiston, or in that part of the river commonly referred to in that section of the state as the lower river. It is conceded by the parties to this action that the boat was constructed for the purpose of navigating the Snake river, and that the vessel cost the sum of $30,000, and it is quite clear that it is worth somewhere about $25,000 at the present time. Such a property is only valuable for one purpose, and that is navigation. So soon as it is taken out of commission and tied up at the docks for any considerable length of time its value begins to depreciate. If the property is in danger of loss or destruction in navigating the lower river, it would certainly be in much greater danger on the upper river. It is quite conclusively shown that the vessel is in charge of a most competent and skillful seaman and navigator with a competent crew of men. Under these facts and circumstances the question thus arises: Is the "Mountain Gem" in greater danger of loss or destruction while plying on the lower river than it would be if brought to the upper river, where the plaintiffs and petitioners here contend that it should ply and where they would have the court's receiver operate the boat? We think under these circumstances the dangers are rather diminished than augmented. All of the parties to this action are chargeable with knowledge of the class and character of property upon which the mortgage

was given, and the nature and character of the stream on which it was to ply, and the consequent perils and dangers to which such property would necessarily be subjected. They are also chargeable with notice and knowledge that the Snake river is subject to its periods of low water when vessels cannot ply upon certain portions thereof. Those perils and dangers are no greater now than they were when this mortgage was executed. It is also worthy of note here that the notes and mortgage were past due before this action was commenced, and that the action was not instituted in fact because of a breach of the condition for insurance or any other condition of the mortgage than failure to make payment when due. While other conditions are charged as a ground for the appointment of a receiver, the gist of the action is the failure to make payment when due. The defendant Allen has made a tender of one year's interest on this mortgage, and while the property is shown to be worth in the neighborhood of $25,000, there is only $8,000 principal due these plaintiffs. The property is, therefore, abundantly sufficient to respond to any judgment and decree of foreclosure which may be obtained against it. While the property is subject to many dangers and perils, those risks are no greater apparently now than they were when the mortgage was executed. Many authorities touching the various phases of this case have been cited by the respective counsel, but we do not think it necessary or profitable to review them here. After a full and careful consideration of the entire showing made, we are satisfied that we should deny the application for appointment of a receiver pending appeal. The application is denied, and costs thereof awarded in favor of the respondent, Allen.

Stockslager, C. J., concurs.

Sullivan, J., did not sit at the hearing and took no part in the decision.