## Archibald P. Newton v. John McKay.

*Mortgages : Possession : Permission.* Permission to the mortgagee to take possession of the mortgaged premises, given by the mortgagor's administrator after he had parted with the title, is of no more force than if given by a stranger.

*Mortgages : Ejectment : Right of possession.* Under our statute (*Comp. L. 1871,* § 6263), forbidding ejectment suits by mortgagees before foreclosure, the possession of a mortgagee who goes in without the permission of the mortgagor, though peaceably taken, cannot be upheld; this was in effect decided by *Mundy v. Monroe,* 1 *Mich.,* 68.

*Mortgages : Possession : Permission.* Whether, in case a mortgagor puts a mortgagee in possession, or gives him permission to enter, any inference would arise that the license is given with a view of making the possession subservient to the purposes of the mortgage:—*Quære?*

*Heard October 13.    Decided October 20.*

Error to Cheboygan Circuit.

*Atkinson & Hawley,* for plaintiff in error.

*L. S. Trowbridge,* for defendant in error.

CAMPBELL, J.

This was ejectment brought by Newton, as owner of the equity of redemption of lands, against McKay, who holds as assignee of a mortgage not in a shape to be foreclosed by advertisement, but which had been proceeded on by statutory foreclosure.

The facts appear substantially as follows: Newton holds by deed from the estate of one Belote, given by his administrator in August, 1869, under a probate decree enforcing a contract made by Belote for the sale of the land in 1868. McKay holds by assignment a mortgage made by Belote in 1866, irregularly foreclosed in 1869, and by a deed from Belote's administrator, given in June, 1871. For some unexplained reason McKay went into possession in the summer of 1871. The court below sustained the legality of his possession as a mortgagee.

The first question to be considered is the character of this entry. It is claimed to have been with the mortgagor's consent. But when the entry was made, and when the deed was given by Belote's administrator to McKay, all the right of the estate had been divested by the previous conveyance under the probate decree. Thereafter Belote's estate had no further concern with the land, and permission from the administrator was no better than if Belote had never owned it. The question then arises, whether a mortgagee who goes into possession without the permission of the mortgagor, has a right to hold possession against him. It is claimed that such possession, peaceably obtained, may be upheld.

It was held in *Mundy v. Munroe, 1 Mich. R., 68,* that if the statute of 1843, forbidding ejectment suits by mortgagees before foreclosure, applied to existing mortgages, it was invalid, because impairing the obligation of contracts. In other words, it was held that this law was inconsistent with a contract which authorized the mortgagee to take possession,—as he always could at common law. The court,

in further declaring the object of the act to be to take away the right of possession from the mortgagee, merely expressed the same idea. It would be absurd to hold there could be a right of possession which could not lawfully be enforced. This holding was in no sense *obiter dictum*, but was the very thing decided.

In all the decisions and rulings made by this court since, this idea has been adhered to, and the right of possession has been denied. In *Crippen v. Morrison, 13 Mich. R., 23,* and *Hogsett v. Ellis, 17 Mich. R., 351,* the questions involved bore directly on the existence of any right of possession.

Where the mortgagee has no authority not derived from the mortgage itself, there is no middle ground between a right to sue for possession and no possessory right. The form of the mortgage remains as before. The right of possession, if it exists at all, exists because the legal title passes, and can be enforced by legal remedies. There can be no such things in existence at the same time as a mortgagor's right to hold possession and a mortgagee's right to hold it. One must be entitled, to the exclusion of the other.

If a mortgagor puts a mortgagee in possession, or gives him permission to enter, there may arise an inference that the license is given with a view of making the possession subservient to the purposes of the mortgage; and there may be convincing reasons for regarding such a possession as not subject to disturbance by the mortgagor without redemption. That question is not now before us. But whatever authority exists in such a case originates in the license, and not in the mortgage, and forms no part of the original contract.

When the law of 1843 was passed, the common-law doctrine of mortgages had become so far modified by the rules of equity that the last innovation was almost a corollary of former ones. Where a mortgagee's estate had been moulded into a mere security for a personal claim, and the estate in land passed by a parol transfer, and became personalty, the remedy by ejectment became incongruous. It must in

many cases be brought in the name of a party having no interest of his own, or by one who traced his title without conforming to the rules of the statute of frauds, which requires estates to be transferred more formally. Where the estate in fee was regarded as belonging to the mortgagee, the possession belonged with it. When the fee was no longer regarded as passing, the possessory right became anomalous. It was an incident which had become severed from its principal, and which led to serious complications in settling the equities of foreclosure and redemption. The act of 1843 was the last thing needed to harmonize the law, and to place mortgages in fact, as they had long been in theory, in the condition of mere securities and chattel interests.

We are aware that in some states the courts have given a similar statute a construction which is absolutely literal, and maintains the right of possession, while forbidding its legal enforcement. We cannot regard this as in harmony with the general rules of law. If the mortgagee in possession can insist on retaining it, his right must depend upon his contract, and, as already suggested, should be capable of enforcement. There can be no interest in lands which cannot be enforced somewhere. And we cannot imagine that the legislature would have taken pains to introduce, as a new and radical change, a measure that could at any time be rendered nugatory by an entry without force.

The decision in *Mundy v. Monroe* is not only to be respected as a precedent, but is in our view in full accordance with the purposes of the statute.

We think the court erred in rendering judgment for defendant on the finding.

The judgment must be reversed, and judgment entered for plaintiff, that he recover possession, with costs of both courts, and that the record be remanded, that defendant may have the benefit of any statutory application for a new trial to which he may become entitled.

The other Justices concurred.