Winkler and others vs. Magdeburg.

WINKLER and others, Executors, Appellants, vs. MAGDEBURG, Assignee, imp., Respondent.
SAME, Respondents, vs. SAME, Appellant.

*September 1 — September 20, 1898.*

(1) *Pledge: Redemption: "Recourse to collaterals."* (2) *Mortgages: Foreclosure: Receivers.*

1. A promissory note secured by collaterals provided that "if recourse is had to the collaterals, any excess of collaterals upon this note shall be applicable to any other note or claim held by said holder against the maker or makers hereof." *Held,* that "recourse to collaterals" meant an actual sale thereof, and that where notice of an intention to sell had been given, but by agreement the sale had been postponed, a tender of the amount due on the note before the sale took place superseded the authority to sell, and redeemed the collaterals, leaving no right to have any excess in their value applied on other claims.

2. The appointment of a receiver, pending the foreclosure of mortgages, to collect and apply the rents of the premises, is *held* to have been proper, where the mortgagor was insolvent and had made a general assignment, and the assignee was in possession, taking the rents and profits of the mortgaged premises, but the taxes had not been paid or the insurance kept up, and there was a question whether the premises would be found to be adequate security for the amount of the mortgage debts and subsequent incumbrances.

APPEALS from a judgment of the superior court of Milwaukee county: GEO. E. SUTHERLAND, Judge. *Affirmed.*

This was an action for the foreclosure of certain mortgages, and the complaint alleged that the defendant Richter and wife, June 17, 1889, executed a mortgage of lots 6 and 7 in block 37 in the city of Milwaukee, to secure the note of said Richter for $6,000, of which $5,000 and interest remained due, which note and mortgage were held by the plaintiffs. Also, that they, on April 12, 1895, executed a mortgage of lots 5, 6, 7, and 14 in block 37 in the Second ward of the city of Milwaukee, and of the north half of lot 9 in block 63 in the Fourth ward of said city, to secure the notes of said Richter, amounting to $20,000, which, with accrued interest, remained wholly unpaid; that said notes and mortgages had been assigned to the plaintiffs prior to the 1st of January, 1896; that on the 9th of May, 1896, they being the owners and holders of said notes and mortgages and the indebtedness secured thereby, the defendant Richter, for value received, in addition to said notes and mortgages, made his promissory note in writing, dated May 9, 1896, whereby he promised to pay to the order of the estate of Rudolph Nunnemacher (the plaintiffs being then and there the legal representatives of said estate, and the executors of said Nunnemacher, deceased) the sum of $4,000, with interest at the rate of six per cent. per annum, payable semi-annually, and delivered the same to the plaintiffs, and deposited with them, *as collateral security for the payment of said note,* forty-three shares of the capital stock of the Concordia Fire Insurance Company; that the defendants, in and by the terms of said promissory note, gave to the legal holder thereof authority to sell the said forty-three shares of stock, or any part thereof, on the maturity of said note, or at any time thereafter, without advertising the same or demanding payment or giving any notice, and to apply so much of the proceeds thereof to the payment of the said note as might be

necessary to pay the same, with all interest due and all expenses attending the sale of the securities, including attorney's fees; that in and by said note it was specially agreed that at such sale the holder thereof might become the purchaser of the whole or any part of said collaterals; *and that, "if recourse was had to said collaterals, any excess of collaterals upon said note should be applicable to any other note or claim held by said holder against the maker thereof."*

The complaint further alleged that the defendant Richter became insolvent prior to the maturity of the note, and on the 3d of May, 1897, made an assignment for the benefit of his creditors, pursuant to the statute in such case made and provided; that the defendant *Magdeburg* became and was his assignee, and entered upon his duties as such; that said $4,000 note was not paid at maturity, and the plaintiffs gave notice to the defendant *Magdeburg*, the assignee of the defendant Richter, of the terms of said note, and that they would cause said forty-three shares of stock to be sold at their office, May 24, 1897, at 10 o'clock in the forenoon, and would apply the proceeds of said sale, first, to the payment of said note, *and the excess, if any, to other obligations of said Frederick Richter held by said plaintiffs;* that like notice was on or about the same day given to the defendant Richter; that, after the giving of such notice, the defendants *Magdeburg* and Richter requested said plaintiffs to postpone said sale in order that a fair price might be realized for said collaterals; and by agreement the sale was postponed to the 2d of June, at 10 oclock in the forenoon, at the same place; that after said postponement had been agreed on, said *Magdeburg* tendered to the plaintiffs the amount due on said $4,000 promissory note, dated May 9, 1896, for principal and interest, and demanded the surrender of said collaterals; that it was then well known that there was an excess in said collaterals over and above the amount due upon the said note, whereupon the plaintiffs claimed that, by the terms of

said note, they were entitled to the application of such excess to the said other notes so held by them as aforesaid; that the plaintiffs did not accept said moneys so tendered them, nor surrender said certificates of stock; and the plaintiffs alleged that said proposed payment of said note by said assignee was, in point of fact, an attempt to pay said note out of said collaterals, when the said assignee had in his possession, as such, no means for paying the same, nor had the same been proved as a claim against the estate represented by him, but he had procured the money to make said tender upon the faith and credit of said collaterals only, and expected to repay the same out of a sale thereof which he expected to be able to make in a very short time, and thus to turn said collaterals to the payment of the note, and secure to himself as assignee the surplus value thereof. The plaintiffs also claimed that by reason of recourse had to said collaterals for the purpose of paying the $4,000 note, aforesaid, they were entitled to the excess of said collaterals over and above the amount due on said note, to apply on the notes hereinbefore set forth, and then so held by them.

It was alleged and shown that after the notice of sale and adjournment thereof, so agreed upon, the plaintiffs, June 2, 1897, caused said forty-three shares of stock to be sold at public auction to the highest bidder, for the sum of $7,052; that the plaintiffs paid for expenses of sale, including attorney's fees, $100, alleged to be a just and reasonable sum, realizing from the sale of said collaterals the sum of $6,952; and that there was due upon said note of $4,000, dated May 9, 1896, with interest to May 29, 1897, the sum of $4,253.33, leaving a surplus to be disposed of in the hands of the plaintiffs of $2,698.67, which they claimed to be entitled to hold, and to apply on the notes and indebtedness hereinbefore set out; but, if they were not entitled thereto, they were ready to pay the same to the defendant *Magdeburg*, or such other party as might be adjudged entitled thereto. The plaintiffs

charged, upon information and belief, that the defendant Richter was utterly insolvent and irresponsible, and that no claim for any deficiency could ever be collected from him, and alleged, upon information and belief, that the mortgaged premises were scant and inadequate security for the said indebtedness, and were further incumbered by a mortgage of $10,000 held by the defendant Jacob Nunnemacher.

Plaintiffs demanded judgment, fixing the amount due them upon said notes secured by mortgages as aforesaid, both for principal and interest, and also for premiums of insurance paid by them, and for any taxes they might thereafter pay upon said mortgaged premises, and any other moneys or expenses they might be required to pay out, and which ought to be paid by said mortgagors, and that it be determined and adjudged by the court whether or not the plaintiffs were entitled to said sum of $2,698.67, and that the same be, by the judgment of the court, applied towards the payment of said indebtedness, and that the sum due to the plaintiffs upon said indebtedness be fixed by such judgment. There was a prayer for a sale of the mortgaged premises in case the same were not redeemed, and for general relief.

The defendant Jacob Nunnemacher and the plaintiffs had filed a duly verified petition, supported by affidavits, for the appointment of a receiver to collect and receive the rents and profits of the mortgaged premises, and out of the same to pay the taxes accrued, and such as should thereafter accrue, and repay the sums of money expended by the plaintiffs for premiums of insurance, with interest thereon, and that he pay out of said rents the cost of keeping said property insured to the date of sale, and hold the remainder of the moneys subject to the order of the court, to be applied to the payment of the indebtedness of the said several mortgages, if upon sale the same should not otherwise be paid in full, alleging that the property was uncertain and inade-

quate security for the whole amount of the indebtedness, and it was very doubtful whether it could be sold for sufficient to discharge the same if taxes, interest, and cost of insurance were allowed to accumulate. The petition also averred the insolvency of Richter, and the execution by him, and by the firm of Richter & Sons, of which he was a member, of an assignment to the defendant *Magdeburg* of their property for the benefit of their creditors, and that said assignee was receiving and collecting the rents and profits.

Said petition was opposed by a verified answer and affidavits, denying that the mortgaged premises were uncertain or inadequate security for the amount referred to, and alleging that the present cash value of said property and real estate exceeds considerably the whole amount due on said mortgages, including interest, taxes, and insurance, and the amounts to become due before sale thereof under foreclosure; that all of said real estate was what was termed by brokers "inside property," and had a certain fixed value, that had not fluctuated, but was constantly increasing, and averred that, in the opinion of deponents, said plaintiffs and said Jacob Nunnemacher were amply secured under said mortgages.

The court found that sufficient grounds existed for the appointment of a receiver as prayed for, and, as a part of the judgment, appointed a receiver accordingly to collect the rents of such portions of the mortgaged premises as were rented, etc., and directed that the defendant *Magdeburg* should not be required to pay rent for such portion of the mortgaged premises as he might personally occupy as assignee, nor should the receiver dispossess said defendant Richter of such portion thereof as he occupied at the time of the commencement of the action for his home, nor require him to pay rent therefor, but that he should receive and collect all other rents accruing from and after the date of the judgment, and apply the same as therein specified.

The court found, as conclusions of law, that the plaintiffs had no interest in the excess of the collaterals, to wit, forty-three shares of stock of the Concordia Fire Insurance Company, mentioned in the complaint and findings, and had no right to apply the excess thereof upon the debt set out in the judgment, and that the defendant *Frederick H. Magdeburg* recover of the plaintiffs the costs of the issue raised by his answer. Judgment was entered accordingly.

The plaintiffs appealed from that portion of the judgment relating to the excess of the collaterals and to the costs. The defendant *Magdeburg*, as assignee, etc., appealed from that part of the judgment appointing a receiver.

For the plaintiffs there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *F. C. Winkler*.

For the defendant there were briefs by *Sylvester, Scheiber & Orth*, and oral argument by *Fred. Scheiber*.

PINNEY, J. The main question is as to the proper construction of the $4,000 note. What is the meaning of the provision therein " if recourse is had to the collaterals," and was such recourse had by the plaintiffs in this case? The note gave the pledgee or holder thereof conditional authority to sell the shares of stock, or any part thereof, but depending on the previous maturity of the $4,000 note, or at any time thereafter, in the event of the securities depreciating in value in the opinion of the holder, at public or private sale at his discretion, without advertising the same or demanding payment or giving any notice, and to apply so much of the proceeds thereof to the payment of the note as might be necessary to pay the same, with all interest due and all expenses attending the sale of the securities, including attorney's fees, etc.; and, in case the proceeds of the sale of said securities should not cover the principal, interest, and expenses, the maker or makers thereof promised to pay such deficiency forthwith after such sale. The sale specified

was exceedingly summary in its nature, and its conditions and consequences were extremely stringent. The pledgee might purchase at his own sale, and it was stipulated that, "*if recourse is had to the collaterals, any excess of collaterals upon this note shall be applicable to any other note or claim held by said holder against the maker or makers hereof;* and, in case of exchange of or addition to the collaterals above named, the provisions of this note shall extend to such new or additional collaterals."

The law regards the right of redemption with favor, and it would seem that it cannot well be doubted but that the pledgor in this case might lawfully redeem the pledge at any time before actual sale; that by the *recourse* mentioned in the note was intended an efficient resort to the collaterals by sale for the purpose of realizing their value, with a view to a proper application of the same to the debts of the makers; and it would seem clear that a mere notice of intention to exercise the power of sale could not be considered as an actual or efficient recourse or resort to the collaterals for any real or practical purpose. Mere notice of an intention to sell could not of itself be attended by any legal consequences, and the mere declaration of an intention to sell, wholly unexecuted, cannot properly be considered as a resort to them for any cause or purpose, particularly when, by mutual consent of the parties, the proposed sale at the time specified was wholly abandoned, and a different time was specified or agreed on. We think it would be harsh and inequitable to hold that a notice thus given, and not pursued, but really abandoned, presumably to allow the pledgor time and opportunity to save his property from sacrifice, can with any propriety or justice be characterized or considered as an actual practical recourse or resort to the collaterals, and that a tender before the second time designated for the sale of the collaterals would not be held sufficient to defeat or prevent the exercise of the power of sale. Such tender would cer-

tainly have been attended by such consequences had it been made before the notice had been given; and we see no reason why a tender should not have the same effect when made at any time before the time to which the sale had thus been postponed. The parties must be fairly held to have contemplated such result. The forty-three shares of the capital stock of the Concordia Fire Insurance Company continued, therefore, to remain the property of Richter, notwithstanding he had pledged the same, as stated, for the payment of the $4,000 note to Nunnemacher; and the right conferred on the latter to apply any part of the proceeds of the stock to other claims or other obligations was uncertain and contingent upon recourse or resort being had to said securities for the satisfaction of the $4,000 note, and was defeated by the tender subsequently made of the amount of the note by the defendant *Magdeburg*. "Recourse" to the collaterals, in the connection in which it is used in the note, signifies a going back to or resort to them for the purpose of obtaining payment of the note. Anderson, Law Dict. The mere giving of a notice of an *intention* to sell the collaterals, which appears to have been abandoned or delayed by agreement of the parties to a later period, and not executed, cannot, in our judgment, answer or fulfill the meaning or purpose of the actual resort to the collaterals contemplated by the note for the purpose indicated. We think, therefore, that the tender of the amount of the debt before any actual sale had been made, superseded the authority of sale, so that the tender came in due season, and that the superior court rightly decided that the plaintiffs had no interest in the excess of the collaterals, or in the forty-three shares of stock of the Concordia Fire Insurance Company mentioned in the complaint and findings, and had no right to apply the proceeds or any part thereof upon any other debt than the $4,000 note. The collaterals were primarily pledged for the payment of the $4,000 note only; and, by the terms of the contract, any ex-

cess only of collaterals in case of realizing from recourse or resort to them — that is, from a sale of them — was to be applied to other debts.

The court found that sufficient ground existed for the appointment of a receiver to collect the rents, with the powers and duties stated in the order for that purpose. The defendant was in possession, taking the rents and profits of the mortgaged premises; and he had failed to pay taxes and the cost of insurance thereon.   It was found that the mortgage debtors had assigned for the benefit of their creditors to the defendant *Magdeburg*, and were insolvent.   There was a question, in view of the showing on the application for the appointment of a receiver, as to whether the mortgaged premises would be found to be adequate security for the amount of the mortgage debt and subsequent incumbrances at the time of the sale.   In view of all the circumstances, we regard the granting of the receivership in question as a prudent and judicious exercise of the power of the court. The payment of taxes and cost of insurance is necessary to preserve the property.   Equity devolves it upon him who has the use.   Not to pay them is waste.   The failure of the defendant to pay the taxes and insurance was casting a burden on the mortgaged estate, which equity demanded that the mortgagors should discharge. The order was fully justified, as within the rule of adjudicated cases. *Schreiber v. Carey*, 48 Wis. 208.   It was a want of good faith on the part of the mortgagors to neglect to pay the taxes and insurance upon the property, and yet remain in possession and appropriate all of the profits of the use of the estate to their own purposes.

It is proper to state that there is no bill of exceptions in the record, so as to admit of a review of the case upon any of the findings of fact essential to the judgment.

For the reasons stated, the case should be affirmed on both appeals.

*By the Court.*— Judgment is ordered accordingly.