## ADAMS *et al. v.* BLALOCK.

Under the evidence in the case the court did not err in the appointment of a receiver to take charge of the property involved, pending the litigation, upon the terms and conditions stated in the order.

No. 5394.    DECEMBER 16, 1926.

Receivership, etc.    Before Judge Humphries.    Fulton superior court.    March 24, 1926.

D. B. Blalock brought his equitable petition against Robert L. Adams and Mrs. Robert L. Adams, alleging as follows: Robert L. Adams is a non-resident of the State of Georgia, and Mrs. Adams is a resident of Fulton County, Georgia.    On February 20, 1925, petitioner and Robert L. Adams entered into a written agreement for the sale by petitioner to Adams of a house and lot in the City of Atlanta, a description of the house and lot being set forth in the petition.    The purchase-price of the property was $12,500, as shown by the written contract.    Adams executed and delivered to petitioner 70 promissory notes for the sum of $100 each, all dated February 20, 1925, and maturing on the first of each month from April, 1925, to January, 1931.    Adams went into possession of the property and so remained until the summer or early fall of 1925, when he left Georgia and left Mrs. Adams in possession of said property, and she remains in possession.    Adams failed to pay the notes as they matured at the times specified in the contract, and the notes falling due from June 1, 1925, to March 1, 1926, are due and unpaid.    The contract provides, that, "in consideration of the small payment and long time allowed, should the said Robert L. Adams fail to pay one successive note at the time specified, the said D. B. Blalock shall have the right to take possession of said premises after thirty days notice to said Robert L. Adams, and said Robert L. Adams shall relinquish all claims to said premises

Receivers, 34 Cyc. p. 19, n. 31; p. 21, n. 37; p. 57, n. 90.
Vendor and Purchaser, 39 Cyc. p. 1378, n. 26; p. 1397, n. 99.

under this contract, and all sums which may have been paid to said D. B. Blalock in pursuance of this agreement shall go as rent for said premises." · Petitioner gave due notice in accordance with these stipulations in the contract. It was also agreed in the contract that Adams should "pay all taxes, interest on first loan of $5,000, and insurance on said premises until the full amount of the purchase-money shall have been paid." Adams had failed to insure the building, and petitioner was compelled to do so to protect the property. Adams failed to pay the State and county taxes, amounting to $125, and assessments duly made by the City of Atlanta for street improvements, amounting to $522. Petitioner was compelled to pay these taxes and assessments to protect the property. The defendants are insolvent, and neither of them has any property in the State of Georgia. Robert L. Adams left the State for the purpose of escaping the jurisdiction of the courts of Fulton county, and that he might not be proceeded against under the terms of the contract; but Mrs. Adams is in possession of the property, having been put there by her husband for the purpose of holding possession; and she and her husband are colluding to prevent petitioner from taking possession of the property, in order that they may hold and enjoy the same, the income and profits therefrom, and avoid the payment of rent. The prayers are, for process, for cancellation and rescission of the contract; that possession of the property be restored to petitioner; that pending the litigation a receiver be appointed to take charge of the property, preserve and rent the same, and hold the rents subject to the order of the court; and for general relief.

Defendants demurred and answered. The demurrer was as follows:

"1. It appears from the petition that same is brought for a judgment of rescission and cancellation of a bond for title, the allegation of said petition being insufficient, if true, to support a judgment of rescission and cancellation, there being no offer prior to suit to restore the money and notes held by plaintiff, which he alleges were received from the defendant, Robert L. Adams.

"2. It does not appear from the allegations of the petition that the financial condition of the defendant, Robert L. Adams, with regard to insolvency, is any worse than at the time of the execution of the contract for the purchase of the property described in the petition.

"3. The petition does not set out sufficient facts justifying the appointment of a receiver, it not appearing that there is any waste or impairment of the property, which is plaintiff's security for the payment of defendant's obligation under the contract."

In their answer the defendants set up that while they entered into the contract as alleged, the loan of $5,000 referred to in the contract was to have been placed on the property and assumed by Robert L. Adams, but that plaintiff failed and refused to comply with the agreement to place the loan on the property. They admit that they went into possession of the property and are still in possession. Robert L. Adams made payment of the first three notes in addition to a cash payment of $450, and made considerable improvements on the property, including the construction of five garages and one hundred feet of fencing. He ceased making monthly payments upon plaintiff's failure and refusal to place the $5,000 loan on the property. He stands ready and willing to carry out his part of the contract when plaintiff shows a willingness to comply with his obligations thereunder. Defendants deny that the rental value of the property is $100 per month, averring that it is not worth more than $40 or $50. They allege that on January 20, 1926, Robert L. Adams tendered to the plaintiff the amount due on said notes, with interest, and offered to make payment of all the outstanding notes, but plaintiff failed and refused to accept the tender and declared he would not accept any payment of defendant's obligations and any remaining purchase-price including the loan on said property, as he desired the property and would accept nothing less.

At the hearing the court appointed a receiver to take possession of the property, collect the rents, and hold the property subject to further order. The receiver was directed to pay the taxes and the insurance premiums on the property. The order appointing the receiver contains the following provision: "that upon the defendant Robert L. Adams paying over to the receiver, within fifteen days from this date, a sum equal to the amount now due on all past-due notes, including interest, of the series of notes described in the petition, and the further sum of $125.30, the amount paid by the plaintiff for 1925 taxes, and the further sum of $19.50, the amount paid by the plaintiff for insurance on said property, and the further sum of $522.44, the amount paid by plaintiff to cover

assessments levied on said property by the City of Atlanta for street improvements under the city ordinance of July 7, 1925, and the further sum of $———— interest on first loan referred to in the contract from February 20, 1925, to the date of such payment to the receiver, at six per cent. per annum, the said receiver shall allow and permit the said Robert L. Adams to continue to occupy said house, provided the said Robert L. Adams shall hereafter pay to said receiver, on or before the first day of each month, beginning with the month of April, 1926, the sum of $100, that being the amount of each of said series of notes, with interest on said sum at seven per cent. from February 20, 1925. All such sums paid by said Robert L. Adams to said receiver to be held by such receiver subject to order of the court. If the said Robert L. Adams shall fail to pay over to the receiver the several sums above set out within fifteen days from the date of this order, he shall surrender possession of said property to the receiver, to be held by said receiver in accordance with this order and judgment." To this judgment and order the defendants excepted.

*John W. Crenshaw,* for plaintiffs in error.

*H. A. Allen* and *Culpepper & Murphy,* contra.

BECK, P. J. (After stating the foregoing facts.) We are of the opinion that the court did not err in appointing a receiver. Under the evidence introduced at the trial, the court was authorized to find that the property in question, which Robert L. Adams had agreed to buy, was worth the sum of $12,500, and that the amount which he was to pay monthly was not more than the fair rental value of the property. We are of the opinion, however, that the contract created the relation of vendor and purchaser between the petitioner and Robert L. Adams. Nevertheless, where the amounts of the purchase-money to be paid monthly were no greater than the rental value of the property, and the defendant was far in arrears in the payment of this rent, and the insurance and taxes and assessments upon the property under municipal ordinances, the rights of the vendor in this case would not be protected except by the intervention of a court of equity and the application of the remedy which the court saw fit to apply under the evidence. It has been well said that "Receivers are not appointed as a matter of right, but to preserve rights." And in such matters as these, courts of equity find directions as to caution, etc., in the Code. "The power of appoint-

ing receivers and ordering injunctions should be prudently and cautiously exercised, and except in. clear and urgent cases should not be resorted to." Civil Code, § 5477. These maxims should be kept in mind by judges exercising jurisdiction in equity. See *Planters Oil Co.* v. *Carter,* 140 *Ga.* 808 (79 S. E. 1120) ; *Ray* v. *Carlisle,* 125 *Ga.* 316 (54 S. E. 119) ; *Lytle* v. *Scottish American Mortgage Co.,* 122 *Ga.* 458 (50 S. E. 402). In *Tumlin* v. *Vanhorn,* 77 *Ga.* 315 (3 S. E. 264), it was said: "Where a contract of sale contemplated only the holding of title by the vendor as security for the unpaid purchase-money, it was improper, on the hearing of an application for injunction and receiver, for the chancellor to require the defendant to give security for the forthcoming of the rent notes taken from his tenants and for the appropriation of the rents of the land to the payment of complainant's debt. The power of appointing receivers and ordering injunctions should be prudently and cautiously exercised, and except in clear and urgent cases should not be resorted to. Especially is this so where the party invoking the interposition of a court of chancery has a plain and adequate remedy at law by suit, garnishment and. levy for the protection and enforcement of the rights reserved to him under the contract." And the maxim that courts of equity should be prudent and cautious in the exercise of the power of appointing receivers and ordering injunctions is also, in this case, repeated and emphasized.

But what have we here? The defendants are in possession of a house and lot worth more than $12,000. The rental value of it is, as the chancellor was authorized to find, $100 per month. The purchase-money note payable monthly for five or six years was only equal to the rental value per month, as the court was authorized to find under the evidence. The defendant was insolvent, had no property in Georgia; and if he is allowed to default in the payment of these notes, the petitioner will necessarily suffer, unless a receiver be appointed who can rent the property and collect the rent. But .the defendant insists that this would ,not entitle the petitioner to the appointment of a receiver, inasmuch as he was not less solvent than he was at the time of the purchase. The court was authorized to take a different view of this. He had .allowed the installments which he was to make upon the purchase-price to accumulate without paying the same. He had not even

paid the note for $450, according to the plaintiff's testimony, which he alleged he had made as a payment on the property. The City of Atlanta had made an assessment of $522 for street improvements, which was a charge against this property after the sale of the same to Robert L. Adams. He had not paid the State and county and municipal taxes, $122. The petitioner in order to protect his property was compelled to pay these assessments and taxes, and in addition thereto to carry the insurance which the defendant had agreed to carry. According to the defendant's own testimony, he made a tender, after the notice was served upon him, of the amount due on the notes, but did not tender the $600 or $700 which it was his equitable duty to pay for the assessments, taxes, and insurance. The clear, indisputable rights of the petitioner were in jeopardy. A court of equity will not compel a suitor under these circumstances, in order to protect his property, to bear the burden which an insolvent purchaser has agreed to bear and which in equity and good conscience he ought to bear. The defendants say in their answer that Robert L. Adams "made considerable improvements on the property, including the construction of five garages and 100 feet of fencing." The plaintiff's evidence was to the effect that the cost of these improvements did not amount to more than two or three months rent; and the court had a right to give credit to that evidence.

But the defendants further set up this defense: "Defendant Robert L. Adams ceased making said monthly payments upon plaintiff's failure and refusal to comply with his agreement to place a $5,000 loan on said property. Defendant stands ready and willing to carry out his part of the contract when plaintiff shows willingness to comply with his obligations thereunder." By this part of the answer the defendant rests his right and refusal to make the monthly payments as they fell due "upon plaintiff's failure and refusal to comply with his agreement to place a $5,000 loan on said property." This defense is without merit. There is a clause in the contract, rather ambiguous if we merely consider the wording of it, to this effect: "Said contract being made subject to a straight loan of $5,000.00." But when considered in connection with the balance of the contract and the evidence in the case, it is clear that these words were intended to reserve to the vendor the right to borrow $5,000 as a loan on the house and lot in question,

for his own benefit if he saw proper to do so.  There is not a word in the contract to indicate that Robert L. Adams was to get any part of this $5,000.  It merely gave to Blalock the privilege of borrowing the $5,000, securing it by a mortgage on the premises, and that when this was done the mortgage should be a charge on the land, and that Adams would carry this as he carried the balance of the debt for the purchase-money.  This loan, if it was made, was to be made on March 1, 1925, and due March 1, 1930, as the contract stipulates, interest at six per cent. thereon payable semi-annually.  It will be remembered that this contract was made on February 20, 1925.  The loan contemplated was to be dated March 1, 1925, and due after a term of five years.  There is no word in the contract that imports a duty on the part of the vendor to make this loan, unless the words, "This contract is made subject to a straight loan of $5,000.00," import such a duty.  And we do not think that it can be so construed.  But even if it could be, the maturity of the notes was in no way subject to this; certainly not, if the purchaser continued to hold the house and lot under the contract.  If the words, "This contract is made subject to a straight loan," etc., were a condition intended for the benefit of the purchaser, then, when he had paid the amount represented by the notes, he might have (and we do not rule that question now) the right to resist further payments until the loan was made.

It will be observed that under the order to which exception is taken the plaintiff in error is allowed to retain possession of the premises upon payment of the amounts due and with which he is chargeable up to the day of the order, and his continuing to pay the amounts agreed to be paid monthly.  We conclude, from a consideration of the facts stated above and the evidence as introduced, that the court was authorized to find that under the express terms of the contract the plaintiff was entitled to recover possession of the premises; and therefore, that the court did not err in granting the qualified order naming a receiver.  In addition to the prayer for possession of the property, there is a prayer for rescission; but there is no allegation in the petition that the plaintiff had offered to return the notes given for future payments of the purchase money; and without such an allegation the petitioner would not be entitled to rescission.  And upon final trial he will not be entitled to rescission unless there is an allegation of a tender of the

notes given prior to the bringing of the suit; but failure to make allegations which would entitle him to rescission would not preclude his right to recover possession in accordance with the express stipulations in the contract.

*Judgment affirmed. All the Justices concur.*