NUSBAUM *v.* SHAPERO.

1. MORTGAGES—MORTGAGEE MAY NOT EJECT MORTGAGOR UNTIL TITLE THROUGH FORECLOSURE BECOMES ABSOLUTE—STATUTES.

Since enactment of Act No. 62, Pub. Acts 1843, followed by 3 Comp. Laws 1915, § 13221, abrogating common-law rule that at any time after default mortgagee could bring ejectment proceedings against mortgagor, law has been well settled that, as rule, mortgagee may not divest mortgagor of possession of mortgaged premises until title thereto shall have become absolute upon foreclosure of mortgage.

2. SAME—ASSIGNMENT OF RENTS AND PROFITS NOT ENFORCEABLE UNLESS EQUITABLE RELIEF CALLED FOR.

In view of said statute, clause in mortgage assigning rents received from mortgaged premises has generally been held invalid and appointment of receiver refused unless there were other circumstances that called for equitable relief.

3. SAME—APPLICABILITY OF STATUTE PERMITTING ASSIGNMENT OF RENTS.

Provision of Act No. 228, Pub. Acts 1925, permitting assignment of rents and profits of mortgaged premises to trustee under trust mortgage for benefit of bondholders is not applicable to mortgages executed prior to its enactment.

4. SAME—APPLICABILITY OF EJECTMENT STATUTE.

Provision of 3 Comp. Laws 1915, § 13221, that no action of ejectment may be maintained by mortgagee for recovery of mortgaged premises until title thereto has become absolute upon foreclosure of mortgage, applies equally to period prior to beginning of foreclosure proceedings as to period subsequent thereto.

5. SAME—ASSIGNMENT OF RENTS ENFORCEABLE FOR PAYMENT OF TAXES AND INSURANCE BUT NOT FOR PAYMENT OF PRINCIPAL AND INTEREST.

In view of 3 Comp. Laws 1915, § 13221, trustee under trust mortgage for benefit of bondholders executed before enactment of Act No. 228, Pub. Acts 1925, is not entitled to possession of

On right of mortgagee to appointment of receiver to prevent waste, see annotation in 26 A. L. R. 33; 36 A. L. R. 609; 55 A. L. R. 533.

mortgaged premises on account of nonpayment of principal
and interest prior to mortgagee's title becoming absolute upon
foreclosure, notwithstanding clause in mortgage providing
therefor, but provisions of mortgage insuring payment of
taxes and insurance may be enforced by court of equity not-
withstanding said statute, since failure to pay same may re-
sult in impairing security, especially where ownership of prem-
ises is uncertain, and trustee has been provided with no funds
for said purpose.

6. SAME—SPECIFIC PERFORMANCE OF CLAUSE ASSIGNING RENTS.
    In suit by trustee for specific performance of provisions of trust
    mortgage assigning rents and profits to trustee for benefit of
    bondholders in event of default in payment of principal, in-
    terest, taxes, and insurance, decree of specific performance is
    modified, on appeal, limiting relief to payment of taxes and
    insurance.

Appeal from Wayne; Cross (Orien S.), J., pre-
siding. Submitted October 24, 1929. (Docket No. 75,
Calendar No. 34,499.) Decided January 24, 1930.
Rehearing denied March 7, 1930.

Bill by Otis D. Nusbaum, trustee under a trust
mortgage, against Bune M. Shapero and others to
compel specific performance of provision of the
mortgage assigning rents thereunder to trustee in
event of default of payment by mortgagor. From
a decree for plaintiff, defendants appeal. Modified
and affirmed.

*George E. Brand,* for plaintiff.

*Wm. Henry Gallagher,* for defendants Bune M.
Shapero and Harold M. Shapero.

*Harold M. Shapero,* for defendant Samuel Sha-
pero.

BUTZEL, J. In March, 1922, the owners of the
property at Fourteenth and Blaine avenues, Detroit,
Michigan, executed a mortgage to Otis D. Nusbaum,

trustee, plaintiff herein, for the purpose of securing $70,000 of first mortgage bonds. A contract was entered into with Straus Brothers Company, a large investment company, to sell the bonds after they had been duly validated by the securities commission. Plaintiff, as far as the record shows, had no interest in the bonds except as trustee, nor were any funds left with him with which to protect the security.

The trust mortgage was given for the purpose of erecting a 25-apartment building on the premises. It not only covered the property and improvements thereon but also all rents, profits, and issues thereof. It contained provisions that the indenture would remain a first lien upon the estate and premises covered by the indenture. The mortgagors agreed to defend the trustee in the peaceful and quiet possession of the premises and to execute all further instruments to carry into effect the covenants of the mortgage. They agreed to maintain insurance and pay taxes as they became due, and in this behalf they authorized the trustee to act as their agent in the event of their failure to procure or renew the insurance, repair the building, pay taxes or assessments, remove mechanics' liens, carry on the prosecution of any suit affecting the security of the bonds. All moneys advanced for these purposes by the trustee were made a lien under the indenture. The mortgage contained an acceleration clause in the event of a default, and a right to waive it after the default was cured. It provided for a receiver in the event court proceedings were begun. It contained the usual clause giving the mortgagors the right to remain in possession of the premises, etc., while not in default. The covenants in the mortgage were made binding on all persons who might subsequently hold title to the property.

Article 8 of the mortgage empowered the trustee to enter and take possession of the premises in the event of any default for which the mortgage authorized him to declare the amount due and payable immediately. The mortgagors agreed to surrender the premises to him upon demand and empowered him, in his discretion, with or without force and with or without process of law, and without declaring the principal of the bonds due and without any action on the part of any bondholder, to enter upon, take and maintain possession of the premises, together with all records, documents, books, papers, and accounts, and to hold, manage, and operate the premises and collect the rents thereof, enter into leases, etc. Out of the proceeds of the rent the trustee was authorized to pay all arrearages of every kind, including 5 per cent. of all amounts collected for his compensation, and after all such arrearages had been paid, together with a sufficient amount to pay the next accruing instalment of interest, he was to return the property to the mortgagors. This right of entry, etc., might be exercised as often as it might be necessary.

Through a number of mesne conveyances, including foreclosure proceedings on a second mortgage, and after some litigation with owners in the chain of title, the defendants Bune M. Shapero, Harold M. Shapero, and Samuel Shapero, or some of them, became the owners of the equity of redemption. Bune M. Shapero occupied one of the apartments in the building. It is not clear as to who the real owners of the equity of redemption are, as there seems to be considerable confusion arising through the statements of some of the defendants and the title record as appears in the register of deeds' office, and the further fact that defendants had given to one another unacknowledged deeds which were kept in the

family safe. Defendants had failed to make payments of principal, interest, taxes, and insurance premiums in accordance with the terms of the mortgage for several years prior to the beginning of this suit. Thereupon the trustee made written demand for the immediate possession of the land and buildings and for the rents, issues, and profits thereof, in accordance with the indenture. Plaintiff further served notice on the various tenants in the building demanding that the rent be paid to him under the assignment of rents clause in the mortgage. Defendants then sought to counteract the effect of this notice by notifying the tenants not to pay any attention to plaintiff's notice. Without instituting foreclosure proceedings, plaintiff has brought this suit in order to obtain the rents and profits from the building and the right of possession thereto. He asks for specific performance of Article 8 and the other clauses in the indenture by virtue of which plaintiff claims he is entitled to possession of the premises and the rents and income thereof. He further asks for an injunction restraining any interference by defendants in obtaining said rents and profits and possession of the property. He also asks for general relief.

Defendants deny that the court has any jurisdiction, and that plaintiff has any right to the relief sought until the title to the property shall have become absolute upon a foreclosure of the mortgage. Defendants in a cross-bill ask for affirmative relief so as to remove any claims plaintiff may have on account of the notice to tenants to pay the rent to plaintiff instead of to defendants. Subsequently, an order was entered permitting them to withdraw their cross-bill without prejudice. The circuit judge entered a decree of specific performance in favor of plaintiff, and defendants have appealed to this court.

The questions involved are presented by helpful briefs of respective counsel. The first question raised is whether Article 8 and the other provisions of the mortgage can be enforced in view of 3 Comp. Laws 1915, § 13221, which provides as follows:

"No action of ejectment shall hereafter be maintained by a mortgagee, or his assigns or representatives, for the recovery of the mortgaged premises, until the title thereto shall have become absolute upon a foreclosure of the mortgage."

The law is well settled in this State that, as a rule, a mortgagee may not divest the mortgagor of possession of mortgaged premises until the title thereto shall have become absolute upon foreclosure of the mortgage.

Section 13221, 3 Comp. Laws 1915, was preceded by Act No. 62, Pub. Acts 1843, which was of like tenor and effect, except for a slight difference in the wording. Prior to the statute of 1843, the old common-law concept of a mortgage prevailed. The mortgagee took legal title to the property and at any time after default could bring ejectment proceedings against the mortgagor. In *Stevens* v. *Brown,* Walk. Ch. 42, the mortgagee, defendant in the cause, had taken possession of the property by virtue of an irregular foreclosure, and the mortgagor brought proceedings to restrain defendant from further acts of ownership. The court said:

"The legal title to lands mortgaged is in the mortgagee, who may at any time after a default in the payment of the mortgage money or any part thereof, if not before, where the mortgage does not provide for the mortgagor's retaining possession until that time, put the mortgagor out of possession by ejectment. 4 Kent's Com. 155, and cases there cited. At law, the defendant has a right to the possession

of the mortgaged premises, and equity will not take from him that right."

The right of a mortgagee to possession of the premises prior to foreclosure has been construed by this court very frequently since the enactment of the 1843 statute. We have consistently held that, as a rule, a mortgagor may not be deprived of possession until after the expiration of the equity of redemption through foreclosure proceedings.

In the case of *Hazeltine* v. *Granger,* 44 Mich. 503, the question of the right of possession arose after the default in a mortgage which granted to the mortgagee not only the premises but also all rents, income, and profits. The mortgage provided for the appointment of a receiver during the process of foreclosure. Justice CAMPBELL stated, page 505:

"Even this was regarded as contrary to public policy by our legislature, and in 1843 the old law was changed so as to secure the mortgagor in his possession until a foreclosure had become absolute. The effect of this, as we have several times decided, was to prevent the mortgagee from obtaining under his mortgage any interest beyond that of a security to be enforced only by sale on foreclosure, and to debar him from any right of possession.    *    *    *

"The statute does not say that no ejectment shall lie unless there is an agreement to that effect, but that it shall not lie at all. Every mortgage made in common law form contains words whereby, if applied as they read, possession would belong to the mortgagee and his title would become absolute by default. The whole aim of equity was to arrest this forfeiture and not to allow the language of a mortgage to have any force against the equity of redemption. The statute is a further step in the same direction for the protection of mortgagors against agreements which, as literally drawn and as theretofore

expounded, were deemed dangerous, and against public policy. The language of this mortgage expressly granting rents and profits on default is no stronger than the previous words of grant, and is really narrowed. It was no doubt intended to go further and to evade the statute. If it had contained an agreement that ejectment should lie, it could not very well be enforced against the clause of the statute prohibiting it. It can have no greater force in enlarging the jurisdiction of equity to appoint receivers, which we held, in *Wager* v. *Stone* (36 Mich. 364), had been abolished. Any such attempt to create a forfeiture is contrary to equity and equity will not enforce it. The same principle which makes all original agreements void which destroy the equity of redemption in advance, must cover a partial as well as complete destruction. In *Batty* v. *Snook,* 5 Mich. 231, it was held that where an agreement was in fact a mortgage, an executory agreement to give up the equity of redemption on default was void, and would violate the doctrine which had annulled the common law forfeiture. If mortgagees can evade the law by requiring a forfeiture of something a little less than the entire freehold, but nevertheless covering its usufruct, the beneficial effect of the modern legislation and to a considerable extent of the previous equitable doctrine will be wiped out.

"We think the mortgage cannot be so enforced in equity as to deprive defendant of possession. As this is a mortgage of nothing but real estate, it is free from any questions which may possibly be mooted concerning other securities."

The principle of *Hazeltine* v. *Granger, supra,* has always been followed in this State. See *Baker* v. *Pierson,* 5 Mich. 456; *Newton* v. *McKay,* 30 Mich. 380; *Crippen* v. *Morrison,* 13 Mich. 23; *Wager* v. *Stone,* 36 Mich. 364; *Fifth National Bank* v. *Pierce,*

117 Mich. 376; *Hardy* v. *Allegan Circuit Judge,* 147 Mich. 594, 596 (118 Am. St. Rep. 557, 10 L. R. A. [N. S.] 474); *Lowrie & Robinson Lumber Co.* v. *Rubin,* 245 Mich. 224; *Janower* v. *F. M. Sibley Lumber Co.,* 245 Mich. 571.

Section 13221, 3 Comp. Laws 1915, enacted in almost its present form in 1843, was an expression of the public policy of the State. At the time of its enactment multiple apartment buildings were not known nor were the modern methods of financing construction loans through the issue and sale of bonds secured by trust mortgages in general use in this State. It has been held in almost every case, that, in view of the statute, the clause in a mortgage assigning rents was invalid, and a receiver would not be appointed unless there were other circumstances that called for equitable relief. This resulted in the enactment of a new law which expresses the change in the public policy of the State, being Act No. 228, Pub. Acts 1925, which provides as follows:

"SECTION 1. Hereafter, in or in connection with any trust mortgage or deed of trust, to secure bonds or obligations issued or to be issued thereunder, it shall be lawful to assign the rents and profits of the property mortgaged to the trustee or trustees under the trust mortgage or deed of trust for the benefit of the bondholders and holders of the obligations issued or to be issued under the trust mortgage or deed of trust.

"SEC. 2. The assignment of rents and profits, when so made, shall be a good and valid assignment of rents as against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of the trust mortgage or deed of trust, and shall operate against and be binding upon the occupiers of the premises from the date of the filing by the trustee or trustees in the office of the

register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the trust mortgage or deed of trust, and service of a copy of such notice upon the occupiers of the mortgaged premises.''

It will be noted that the act begins with the word ''hereafter.'' It does not apply to mortgages executed prior to the enactment of this act of 1925. A new act may at times be merely declaratory of the law as it theretofore existed, and thus clarify any uncertainty that previously existed. This is not true in the present instance.

Plaintiff relies principally upon the case of *Michigan Trust Co.* v. *Lansing Lumber Co.,* 103 Mich. 392, in which it is said:

''It has never been the policy of our law to divest the mortgagor of possession until foreclosure and the expiration of the period of redemption; and while we think it within the power of the parties to stipulate that such possession and management of the business may precede foreclosure, and that in such case a court of equity may enforce specifically such an engagement, as was held by the court below, and as we think is sustained by the authorities (*Shepley* v. *Railroad Co.,* 55 Me. 395; *Shaw* v. *Railroad Co.,* 5 Gray, 162; *Railroad Co.* v. *Superior Court of San Francisco,* 55 Cal. 453; *McLane* v. *Railroad Co.,* 66 Cal. 606 [6 Pac. 748]; *Rice* v. *Railroad Co.,* 24 Minn. 464), yet such power should be exercised with a full recognition of the settled policy of this State, and should not be exercised except in a case where the right is clearly given by the engagement of the party. See *Beecher* v. *Rolling Mill Co.,* 40 Mich. 307.''

This case involved not only real estate but also personal property and a going business. Notwithstanding the statement of the court hereinabove quoted, the court did deny a receiver. The opinion

does not show that 3 Comp. Laws 1915, § 13221, was considered by the court. This case was called to the attention of the court in *Union Trust Co.* v. *Charlotte General Electric Co.*, 152 Mich. 568. In that case an order appointing a receiver was set aside, although the mortgage contained an express assignment of rents upon default. Unless there have been other equitable reasons to the contrary, the court has steadfastly held to the rule set forth in *Hazeltine* v. *Granger, supra,* in its subsequent decisions. In the case of *American Trust Co.* v. *Casselman,* 248 Mich. 76, relief was granted to the original mortgagor, and a receiver appointed to take over the property which had been sold to the mortgagor's grantees so that the original mortgagor would not be held for a deficiency.

Great stress is laid upon the fact that the present proceeding has nothing whatsoever to do with a foreclosure suit, but that it is a contract between parties giving plaintiff certain rights which he now seeks to exercise without bringing foreclosure proceedings. We do not believe that the fact that no foreclosure proceedings have been begun makes any difference. The statute does not say that no ejectment suit may be brought while foreclosure proceedings are pending. It limits the time in no way; it provides for no ejectment suit until the title shall have become absolute upon foreclosure of the mortgage. The statute applies equally to the period prior to the beginning of the foreclosure proceedings as it does to the time subsequent thereto until the title becomes absolute in the mortgagee. If plaintiff's contentions were correct, similar provisions might be incorporated in every mortgage, and then if the mortgagor rented out his home or any other property he could be divested of the income from it until the mortgagee,

at the expense of the mortgagor, had collected therefrom all arrearages for principal, interest, etc., including that which accrued during the period in which the mortgagee held the property, together with interest for six months or more in advance. This might result in possession of the property being withheld from the mortgagor for a protracted period and cause the very hardship that the law seeks to prevent. We are, therefore, of the opinion that the plaintiff did not have the right to possession of the property on account of the nonpayment of principal and interest, notwithstanding Article 8 and the other provisions of the mortgage hereinbefore referred to.

We are, however, of the opinion that plaintiff is entitled to some relief in the premises. The condition of the title made it very uncertain as to whom he should look for payment. From the uncertainty as to the ownership of the property, it might be difficult to determine in whose name the insurance should be placed or who should sign the coinsurance clauses. The defendants were collecting approximately $8,000 per year over operating expenses. They were not applying any part of this amount towards the payment of principal and interest on the mortgage. They were, however, obligated to maintain the security. There is a difference between failure to pay principal and interest and failure to pay insurance premiums and taxes. The former applies to payment of sums due the mortgagee and the latter applies to the security itself. Anything that tends to destroy the security is waste. We do not believe the ejectment statute prevents a court of equity from enforcing provisions of the mortgage which insure the payment of taxes and insurance premiums. The failure to pay them out of the large revenue from

the property might result in the destruction of the larger part of the security. The record shows that large sums were due for insurance premiums, and, further, that the 1927 and 1928 city, State, and county taxes had not been paid, and that the property has been sold for the 1927 city taxes, so that there is at the present time an outstanding tax title against the property. It further shows that there was over $5,600 due for back taxes prior to the beginning of the suit. This does not include the current taxes which are now due, and, if not paid, would make the amount due for taxes approximately $8,000. This constitutes waste, and a court of equity should interfere.

A trustee under a trust mortgage such as the one under consideration is frequently selected not on account of his financial worth but on account of his unquestioned integrity. He may not even have the means to advance moneys for insurance premiums and taxes. The bonds had been sold to the public and the bondholders may be scattered throughout the country. In some instances they may not even be known to the trustee. Those of the defendants who own the title to the premises took it subject to the terms of the mortgage. Defendants are collecting a very large income from the property, and it is their duty to at least maintain the security and not permit its impairment or possible extinguishment through fire or tax sale. We believe the case of *Michigan Trust Co.* v. *Lansing Lumber Co., supra,* is at least authority for this conclusion. In the case of *Union Trust Co.* v. *General Electric Co., supra,* the court quoted that part of the opinion hereinbefore set forth from the case of *Michigan Trust Co.* v. *Lansing Lumber Co.,* but stated, in denying a re-

ceiver, that the taxes were paid. The court further said:

"The right to appoint a receiver depends upon whether a showing has been made that there is danger of ultimate loss to the bondholders by permitting the property to remain in possession of its owners until the final decree and sale. *Union Trust Co.* v. *Railroad,* 4 Dill. (U. S.) 114."

None of the decisions which upheld the right of the mortgagor to remain in possession until title to the property has become absolute in the mortgagee after foreclosure proceedings in any way affect the principle that a receiver may be appointed in the event there is waste.

There is considerable conflict in authority as to whether nonpayment of taxes and failure to pay insurance premiums amounts to waste. In the case of *W. R. Reynolds & Co.* v. *Gordon,* 234 Mich. 189, the court did sanction the appointment of a receiver and it was influenced by the fact that it was impossible to tell who the vendees were under a land contract. A receiver has at times been appointed to prevent waste. *Ralph* v. *Shiawassee Circuit Judge,* 100 Mich. 164; *Union Street Railway* v. *Saginaw,* 115 Mich. 300. The facts in these cases were different from those in the present case. We do not find the exact question ever passed upon by this court in a case where the facts were similar to the one at issue. We believe, however, that a court of equity should not refuse to lend its aid where defendants have taken property subject to a trust mortgage with provisions similar to the one hereinbefore described, where the public, who have bought the bonds, should be protected, where there is uncertainty in regard to the present owners of the title, where the income from

the property is far in excess of the requirements for the upkeep of the property, where there is already an outstanding tax title, and other taxes are not being paid, where insurance premiums are likewise unpaid, and where the mortgagee may have no financial interest in the mortgage except to carry out his duties as trustee.

Decisions of other States are not entirely pertinent. The ejectment statute and the foreclosure laws may be different. The decisions are very much in conflict. In the case of *Winkler* v. *Magdeburg,* 100 Wis. 421 (76 N. W. 332), it was said:

"In view of all the circumstances, we regard the granting of the receivership in question as a prudent. and judicious exercise of the power of the court. The payment of taxes and cost of insurance is necessary to preserve the property. Equity devolves it upon him who has the use. Not to pay them is waste. The failure of the defendant to pay the taxes and insurance was casting a burden on the mortgaged estate which equity demanded that the mortgagors should discharge. The order was fully justified, as within the rule of adjudicated cases."

The court stated in *Schreiber* v. *Carey,* 48 Wis. 208 (4 N. W. 124):

"It is clearly a want of good faith on the part of the mortgagor to neglect to pay the interest on the mortgage debt, or to pay the taxes upon the mortgaged property, and yet remain in possession, and appropriate all the profits of the use of the estate to his own purposes."

In *Pasco* v. *Gamble & Poole,* 15 Fla. 562, 566, the court said:

"I am clear that wherever the mortgagor, legally in possession, and entitled thereto by statute or contract, refuses and fails to do any act which is neces-

sary to the preservation of the estate, and to the doing of this act the appointment of a receiver and sequestration of the rents is necessary, that a court of equity should not hesitate to take the possession from him. Here one of the allegations is that the purchaser has failed to pay the taxes. Such tax is an annual charge upon the lands, and when a receiver is necessary to its discharge the appointment is proper."

With like effect are *Adams* v. *Blalock,* 163 Ga. 345 (136 S. E. 146); *Grether* v. *Nick,* 193 Wis. 503 (213 N. W. 304); *Larson* v. *Orfield,* 155 Minn. 282 (193 N. W. 453). In some of these cases other factors also entered, but we are in accord with the principle set forth in the excerpts from the opinions.

In the present case we believe that this relief should not extend further than to the payment of insurance premiums and taxes. When and if the taxes and the sums expended for insurance premiums have been paid by the defendants, the rents shall revert to the defendants, who then shall be entitled to them until after the title shall become absolute through foreclosure proceedings.

Attention is called to the question of whether a court of equity has jurisdiction, it being claimed that this is an ejectment proceeding and cannot be brought in a court of equity. We do not believe it necessary to discuss this question inasmuch as the rents have been assigned to plaintiff. We have held under Act No. 228, Pub. Acts 1925, that the court will enforce a similar provision and that a receiver will be appointed for that purpose. *Guaranty Trust Co.* v. *Feldman,* 247 Mich. 524.

The bill of complaint seeks specific performance of the contract assigning rents. The decree of the lower court gave plaintiff all the rents, issues, and profits of the mortgaged property, with the right

of possession thereto and the management and operation thereof, until defendants would become entitled to restoration of the property in accordance with the mortgage. It restrained defendants from interfering with the collection of rents, possession, etc. The decree of the lower court will be modified to the extent that plaintiff shall be entitled to all the rents, profits, etc., of the mortgaged premises until all amounts due for taxes and insurance premiums, together with interest on said amounts, shall be paid. Plaintiff shall not only have a right to such amounts, but he shall have the cumulative right to bring suit on the bond given by defendants on the appeal to this court. As soon as the money is paid, either through recovery on the appeal bond or through the collection of rents, profits, etc., or through defendants' paying all taxes and amounts due for insurance premiums, then plaintiff shall have no further right to said rents and profits unless there are further defaults in the payment of taxes and insurance premiums or until their title to said property, it they acquire it, shall become absolute upon foreclosure of the mortgage. There shall further be a stay of proceedings for 30 days from the time of filing this opinion, during which time defendants may pay the aforesaid taxes and insurance premiums, in which event further enforcement of the decree shall become inoperative. It is further provided that in the event plaintiff shall have any difficulties or meet with any interference in the collection of said rents, profits, etc., through the action of defendants, thereupon a receiver may be appointed for said property upon proper application and showing to the circuit judge. The decree of the lower court is modified to this extent and the case is remanded to the lower

court with the foregoing instructions. Plaintiff will recover costs.

WIEST, C. J., and CLARK, POTTER, SHARPE, FEAD, and NORTH, JJ., concurred. McDONALD, J., took no part in this decision.