MORRIS, Trustee, vs. BRANCHAUD and another, imp.

*March 31 — April 19, 1881.*

*(1) Appointment of receiver, in foreclosure. (2) What papers considered on appeal from order.*

1. In foreclosure of mortgages, where no waste, or failure to pay taxes, or diminution of the value of the security, or increase of the mortgage debt, is shown, but on the contrary such debt has been reduced since the securities were taken, and less than half the remaining debt is due, including only a small amount of interest, and the property consists of city lots, presumptively salable in parcels, and there is nothing to show that a party personally liable for a large part of the debt is not responsible to the full amount of any probable deficiency,— it was error to appoint a receiver.

2. This court, on appeal from an order, declines to consider an affidavit which was read on the hearing, but of which no copy was served, the same being no part of the papers on which the motion was based.

APPEAL from the Circuit Court for *Fond du Lac* County. Foreclosure of mortgages, etc. The case is thus stated by Mr. Justice CASSODAY:

"The mortgages sought to be foreclosed, and the liabilities which they were given to secure, are described in the complaint as follows:

"1. A note executed September 13, 1873, by the defendants *Norbert Branchaud* and Joseph Branchaud to one Gould and wife, or bearer, for $2,400, payable in six equal annual payments, with interest at ten per cent.; secured by a mortgage

executed by the same defendants on two and one-half lots in the city of Fond du Lac, to secure payment of part of the purchase money; which note and mortgage had been assigned to the plaintiff for $400 and interest, paid to the assignors by plaintiff as trustee for certain creditors of *Norbert Branchaud*, to whom the latter was indebted over $3,000 in mortgages upon the premises. It was alleged that the payment of $400 due September 13, 1880, and interest for one year, was still due and unpaid; that the mortgage had been satisfied of record by mistake; and that all the defendants except *Norbert Branchaud* had subsequent claims or liens upon the premises.

" 2. A note executed by *Norbert Branchaud* March 2, 1874, to one Bechaud or order, for $1,000, with interest annually at ten per cent., due June 1, 1875; to secure which *Norbert* gave a mortgage of the undivided half of the same lots included in the former mortgage, and of parts of two other lots described, in the city of Fond du Lac; which note and mortgage were assigned to the plaintiff in trust for certain of *Norbert Branchaud's* creditors, who held the third mortgage of the premises, and who were compelled to purchase this mortgage and pay $1,075 therefor in order to protect themselves. The complaint alleged that $1,000, with interest from January 1, 1880, was due on this mortgage, and that all the defendants had subsequent claims or liens on the premises.

" 3. It was further alleged that on the 2d of January, 1874, Joseph Branchaud gave *Norbert* two notes for $1,000 each, bearing interest at ten per cent. per annum, due respectively January 1, 1874, and January 1, 1875, and secured by a mortgage of one undivided half of the lots mentioned in the second mortgage above described (*Norbert* owning the other undivided half of said lots); that one of said notes had been paid, and there was due on the other $1,000, with interest at ten per cent. from January 1, 1880; that Joseph Branchaud and wife had conveyed their undivided one-half of the premises to *Norbert;* and that the latter had assigned said

mortgage of January 2, 1874, as collateral security to the mortgage of March 2, 1876, and the same became the property of plaintiff as such trustee.

"4. It was further alleged that on the 8th of July, 1880, *Norbert Branchaud and wife* mortgaged the same premises above described, to the plaintiff as trustee, for $1,500, payable in three equal installments, in six, twelve and eighteen months.

" Solicitor's fees were claimed, as stipulated in the mortgages — one of $30, and one of $40.

" The complaint also alleged that the property mortgaged was inadequate security for *Norbert Branchaud's* debt to the plaintiff; that the rental would not pay, the interest thereon, and the costs, taxes and insurance, and that *Norbert* was insolvent, and resided in Chicago. The prayer was to set aside* the satisfaction of the first mortgage; for the usual judgment of foreclosure and sale on all the mortgages; that *Norbert* be enjoined from committing waste or impairing the value; that he be adjudged to pay any deficiency; that a receiver to collect and hold the rents and profits of the mortgaged premises, before and after judgment, be appointed; and for general relief.

" The complaint was verified October 11, 1880, by the plaintiff's attorney, upon information and belief. On the same day the same attorney made an affidavit, in effect restating most of the facts stated in the complaint; also that the property was scanty security for the mortgage debt, and would not bring on a sale sufficient to pay the debt and costs; that the monthly rental would not exceed $25; that the principal and interest on all the mortgages amounted to $3,000, of which $1,400 was past due, including $120 interest; and that part of the premises had been rented, and the tenants had been made defendants. Upon that affidavit and the complaint, an order was made October 11, 1880, to show cause, on the second of November, 1880, why a receiver should not be granted. On the hearing, *Norbert Branchaud's* attorneys resisted the

application, and read in opposition thereto *Norbert's* affidavit, sworn to November 17, 1880, stating in effect that his house, and lot 8, block 4, mentioned, were his homestead; that he had not yet permanently located and established himself in business, but was in Chicago experimentally, and that his family had joined him for a part or the whole of the winter, but that he and his family, or some members thereof, might reöccupy said homestead; that there were no judgments against him in Fond du Lac county; and that he did not then owe to exceed $800, exclusive of said mortgage debt.

" The plaintiff, against the objection of the defendant, was also allowed, on the hearing, to read and file, as a part of the motion papers, an affidavit of the plaintiff's attorney, sworn to November 22, 1880, but of which no copy had been served, to the effect that since the action was brought and the application for the receiver had been made, and the *lis pendens* had been filed, *Norbert Branchaud,* who owned the equity of redemption, had sold and assigned the same to Cornelius Branchaud. Thereupon, on the 23d of November, 1880, the court appointed a receiver; and from the order appointing him this appeal is brought."

For the appellants there was a brief by *Spence & Hiner,* and oral argument by *Mr. Spence.*

For the respondent there was a brief by *D. Babcock,* with *R. M. Bashford,* of counsel, and a supplemental brief and oral argument by *Mr. Bashford.*

CASSODAY, J. In *Jackson v. Hull,* 10 Johns., 481, it was held by an able court, that " the creditor who takes a mortgage to secure a debt, by bond or otherwise, has three remedies, either of which he is at liberty to pursue, and all of which he may pursue until his debt is satisfied. He may bring an action of debt upon the bond; or he may put himself in possession of the rents and profits of the land mortgaged, by means of an ejectment; or he may foreclose the equity of redemption, and

sell the land to satisfy the debt." With us there can be no ejectment, and hence the mortgagee must be confined to the other two remedies named.

In the *Sea Ins. Co. v. Stebbins*, 8 Paige, 568, Chancellor WALWORTH said: "To authorize the court to interfere and appoint a receiver where there is a mortgagor, or other party to the suit, who is personally liable for the debt secured by the mortgage in case the amount raised upon the sale shall be found insufficient to pay the debt and costs, the party applying for such receiver must not only satisfy the court that there is a probability that the mortgaged premises will not sell for enough to satisfy the decree, but also that the party who is thus individually liable is himself irresponsible for the probable amount of such anticipated deficiency, after paying all his other just debts."

In *Quincy v. Cheeseman*, 4 Sandf. Ch., 405, it was held, that, " if the premises can be sold in parcels, so that a sale of part will satisfy the debt in arrear, with costs (the entire debt not being payable), a receiver will not be appointed over the entire property."

In *Brown v. Chase*, 1 Walker's Ch. (Mich.), 43, it was held that, "before appointing a receiver to take charge of mortgaged premises, in a suit for the foreclosure of a mortgage, the court must be satisfied —*first*, that the premises are insufficient to pay the debt; and *second*, that the party personally liable is insolvent, so that an execution for the balance due after sale would be unavailing. The security is presumed sufficient until the contrary is shown."

In *Morrison v. Buckner*, 1 Hempstead, 442, it was held that " the general rule is, that receivers will not be appointed in mortgage cases unless it clearly appears that the security is inadequate, or there is imminent danger of the waste, removal or destruction of the mortgaged property; or that the rents and profits have been expressly pledged for the debt."

In *Keep v. Railway*, 6 Ch. Leg. News, 102, WITHEY, J., held

that among the essential elements authorizing the appointment of a receiver was, that "the mortgagor or party personally liable for the debt must be shown to be irresponsible for any deficiency on sale of the mortgaged premises."

The cases cited sufficiently suggest the rules which must be applied to this case. The whole amount of the plaintiff's claim, due and to become due, was only about $3,000. Of this only about $1,400 was due, and that included only about $120 of interest. The mortgaged premises consist of city lots and parts of city lots, which, presumptively, could be sold in parcels. There is nothing in the record indicating that Joseph was not perfectly responsible. Joseph was a maker of the $2,400 note, dated September 13, 1873, and hence was personally liable for the balance due on it. He was also the maker of the two notes and mortgage of $2,000 dated January 2, 1874, and hence personally liable for the $1,000 and interest at 10 per cent. from January 1, 1880, and which had been assigned to the plaintiff as collateral. Thus he was personally liable for all that there was due and payable to the plaintiff at the time of the commencement of this action. This fact of itself would seem to be an insurmountable objection to the appointment of a receiver. Counsel seek to escape from it by claiming that it was alleged in the complaint that Joseph had conveyed to *Norbert* the mortgaged premises, and that he had assumed the mortgage debt, and that the plaintiff took the collateral mortgage subject to this agreement between *Norbert* and Joseph; but we fail to find any allegation that the plaintiff has ever in fact released Joseph from the payment of that $1,000 note. But even if he had, Joseph would still be liable for the balance due on the $2,400 note, and that of itself would seem to be sufficient, under the facts of the case, to prevent the appointment of a receiver. Besides, that mortgage had been discharged of record, and the action was in part to vacate that discharge, and until it was done it may be questionable whether it could be treated as a mortgage in such a sense as

to authorize the appointment of a receiver. Counsel urge that Joseph was not a party to the third mortgage of $1,500, dated July 8, 1880; but that cannot figure in the case, as no part of the principal or interest of that had become due at the time of granting the order appointing a receiver. It will be time enough to consider that mortgage when it becomes due and subject to foreclosure. There is no pretense that any taxes were unpaid, or that any of the property was out of repair, or going to waste, or of any less value than when the mortgages were respectively given; and since none of the respective mortgage debts had increased in amount since the giving of such mortgages, but on the contrary some of them had been materially diminished, the plaintiff, at the time of the appointment of the receiver, held all the security that the respective mortgagees contracted to receive, and much more.

There seems to be no necessity for considering the affidavit read on the hearing, but of which no copy had been served, as it was no part of the moving papers.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded for further proceedings according to law.