SALES vs. LUSK and another, Assignees, etc., imp.

*April 12 — May 15, 1884.*

*Foreclosure of mortgage: Appointment of receiver.*

1. A receiver will not be appointed in a foreclosure action except in a case clearly invoking the exercise of the equitable power of the court to grant that relief.

2. Thus, where the security had not decreased since the mortgage was given, and there was no evidence that the property was being mismanaged by the assignees in possession, it is *held* that, although the mortgagors were nonresident and insolvent, a receiver should not have been appointed upon the application of a plaintiff who sought thereby to intercept the rents and profits and divert them to his own use to the prejudice of prior mortgagees.

APPEAL from the Circuit Court for *Fond du Lac* County.

Action to foreclose a mortgage. The defendants appealed from an order appointing a receiver. The facts sufficiently appear from the opinion.

*Edward S. Bragg*, for the appellants.

For the respondent there was a brief by *Spence & Miner*, and oral argument by *Mr. Spence*. They contended, *inter alia*, that within all the best considered cases the plaintiff had shown himself entitled to a receiver on account of the insolvency of the mortgagors and their nonresidence, and the inadequacy of the security. 2 Jones on Mortg., secs. 1516, 1521, 1533; *Bank of Ogdensburgh v. Arnold*, 5 Paige, 38; *Sea Ins. Co. v. Stebbins*, 8 id., 566; *Howell v. Ripley*, 10 id., 43; *Astor v. Turner*, 11 id., 436; *Warner v. Gouvern-*

*eur's Ex'rs*, 1 Barb., 36; *Clason v. Corley*, 5 Sandf., 447; *Douglass v. Cline*, 12 Bush. (Ky.), 608; *Warwick v. Hammell*, 32 N. J. Eq., 427; *Price v. Dowdy*, 34 Ark., 285; *Finch v. Houghton*, 19 Wis., 149; *Schreiber v. Carey*, 48 id., 208; *Haas v. Chicago Building Society*, 89 Ill., 498. The order of the trial court should not be reversed unless there was a clear absence of vital elements in the case. *Morris v. Branchaud*, 52 Wis., 187; *Verplank v. Caines*, 1 Johns. Ch., 57; *Cairns v. Chabert*, 3 Edw. Ch., 312; *Wall St. Fire Ins. Co. v. Loud*, 20 How. Pr., 95; *M. & M. R. R. Co. v. Soutter*, 2 Wall., 510; *Cortleyeu v. Hathaway*, 11 N. J. Eq., 39; *Stockman v. Wallis*, 30 id., 449.

COLE, C. J. This court has sustained the power of courts of equity to appoint a receiver of rents and profits in a foreclosure action, where the facts show that it would be equitable and just to exercise that power. *Finch v. Houghton*, 19 Wis., 150; *Morris v. Branchaud*, 52 Wis., 187; *Schreiber v. Carey*, 48 Wis., 208. In the last case Mr. Justice TAYLOR examines the question very fully, both upon principle and authority, especially with reference to the legislation of this state which defines the rights of the mortgagor in the mortgaged property before foreclosure and sale. The conclusion reached is that a court should not appoint a receiver in a foreclosure action unless the facts establish a case which clearly invokes the exercise of the equitable power of the court to grant that relief; for the right to the rents and profits does not grow directly out of the relation of the parties, as a matter of strict right, but is founded upon equitable considerations which address themselves to the sound discretion of the court. *Syracuse City Bank v. Tallman*, 31 Barb., 201–208; *Rider v. Bagley*, 84 N. Y., 461. Within the doctrine of these cases, does the plaintiff show himself entitled to have a receiver appointed to receive the rents and profits during the pendency of this action?

The mortgage in suit was executed by Lamar Sexsmith and George F. Sexsmith on the 28th of March, 1883, to secure an alleged indebtedness of $1,000 upon an open account for work and service done and rendered by the plaintiff for them during the years 1880, 1881, 1882, and 1883. The mortgage debt became due the 1st day of May following, and remains wholly unpaid. On the 24th of June, 1883, this action was commenced, and the receiver was appointed on the 31st of July. It appears that on the 18th of April, 1883, the mortgagors made an assignment under the statute to the appellants for the benefit of their creditors, and that the assignees have qualified and entered upon the discharge of their duties. It further appears from the affidavits used on the motion that the mortgaged premises are incumbered by prior mortgages, amounting to $9,000 principal, with some accrued interest, exclusive of the plaintiff's mortgage, and a mortgage subsequent to the plaintiff's of $3,100, and that the mortgaged premises are not worth to exceed $10,000, and it is doubtful if they will sell for as much as that sum. In the complaint it is alleged that the premises are an inadequate security for the sum secured by plaintiff's mortgage, with interest and costs; that the value of the premises consists in great part of buildings, fences, and standing timber; and that said buildings and fences are in a bad state of repair, needing immediate attention and repair to prevent great injury and loss both to the buildings and the farm on which they are situated; and also alleging that the defendants Sexsmith are insolvent and nonresidents.

The assignees in their answer aver on information and belief that the plaintiff's mortgage was made and delivered by the mortgagors in contemplation of insolvency, and as a cover upon their property, in order to hinder and defraud their creditors; that the plaintiff had notice of that fraudulent intent when he received the mortgage, and took the same to aid the mortgagors in that purpose, and holds the

same upon a secret trust for the use and benefit of the mortgagors. The assignee *Lusk* also denies, in his affidavit, all waste, and alleges the condition of the property and fences to be as good as of the average farms in the neighborhood, and that it is now cultivated by tenants in a thrifty manner.

We shall not enter upon the inquiry as to whether the plaintiff's mortgage was given with an honest purpose to secure a *bona fide* debt of $1,000. For, assuming these facts in his favor, still the plaintiff does not establish any equitable grounds for the appointment of a receiver. His mortgage was given but three weeks before the assignment, to secure the payment of a pre-existing debt. There is nothing whatever to show that there was any change, either in the condition of the mortgaged property or in the circumstances of the mortgagors intermediate the execution of the mortgage and the commencement of this foreclosure action. In no respect was the plaintiff worse off the last of June than when he took his security. On what ground, then, can it be claimed that his equities were greater when the suit was brought than they were on the 28th of March, 1883? There was no change, either as to the real estate or personal security in the mean time; nothing has occurred to give him superior equities over the property. Furthermore, it is most probable that the mortgaged property is inadequate for the payment of prior liens against it. The rents and profits will go into the hands of the assignees for the benefit of the creditors of the mortgagors. If these rents and profits should be applied upon the prior mortgages, the plaintiff surely would have no reason to complain of such an application of them. He doubtless knew when he took his mortgage that the property was inadequate security for the payment of his debt, and that the responsibility of the mortgagors was utterly worthless. When the plaintiff applied for the appointment of a receiver he had precisely the same security for the payment of his debt as when he made

his contract,— no more, no less.    But still he is seeking to intercept the rents and profits, and to divert them to his own use, to the prejudice of prior mortgagees, to whom they more justly belong.    In this way he would obtain an advantage over such incumbrancers, and additional security for his debt.    There is no equitable principle which he can invoke that will enable him to do this.    There is no sufficient evidence in the case to warrant the assumption or charge that the assignees are mismanaging the property in any way; that they are permitting it to depreciate and the buildings to go to decay; or that they are not making all out of it possible for the benefit of those having liens upon it.    It is but fair to presume that they are doing as well with the property as a receiver could or would do; therefore, no equitable grounds or reasons exist for allowing the rents and profits to go into the hands of a receiver for the special benefit and protection of the plaintiff.

It follows from these views that the order of the circuit court must be reversed, and the cause remanded for further proceedings.

*By the Court.*— It is so ordered.