GRETHER, Respondent, vs. NICK and others, imp., Appellants, and FIRST WISCONSIN TRUST COMPANY, Receiver, Respondent.

*February 9—April 5, 1927.*
*September 17—October 11, 1927.*

*Mortgages: Rights of mortgagor to rents and profits: Appointment of receiver: Mortgage pledging rents and profits: Tenant paying rent in advance: Right of receiver to secure payment again: Equitable principles: Where advanced rents are used to improve mortgaged premises.*

1. In this jurisdiction the mortgagor of real estate retains not only the legal title to the premises mortgaged, but the right to the possession thereof, and may sell, rent, or further incumber them.   p. 506.
2. The mortgagee acquires no right to a second payment of rent, paid in advance to the mortgagor, as an incident to the power of courts of equity to appoint a receiver to take possession of

mortgaged premises, collect rents and profits, and apply the proceeds on the mortgage debt.  p. 507.

3. Where the legal title to mortgaged premises remains in the mortgagor, a receiver can be appointed in foreclosure proceedings, not merely because the security is inadequate or the . mortgagor irresponsible, but only for the purpose of preventing waste; but delinquent taxes and unpaid interest depreciate the value of the mortgage security and amount to waste. p. 509.

4. Rents and profits collected by the receiver may be applied on the mortgage indebtedness, though not pledged as security for the mortgage debt by the terms of the contract.  p. 509.

5. One may deal with a mortgagor and pay for and acquire any interest in mortgaged premises, which will be subject only to the lien of the mortgage.  p. 509.

*On rehearing:*

6. At common law the mortgagee was not entitled to collect rents and profits until possession was taken, whereupon his right to collect them followed as a matter of course upon his possession.  In this state, under a mortgage pledging rents and profits, the benefit thereof does not pass to the mortgagee until the mortgagor is dispossessed.  p. 512.

7. A mortgagee must invoke the aid of a court of equity to enforce his right to rents and profits; and in case a tenant has paid his rent in advance to the mortgagor, the demand of the mortgagee for a second payment should be determined by the application of equitable principles.  p. 514.

8. Where the mortgagor used rents paid in advance to place a building on the mortgaged premises in a tenantable condition, thus enhancing the value of the security, and the entire proceeding was in good faith, equity will not require the tenant to pay the rents a second time.  p. 515.

APPEAL from an order of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge.  *Reversed.*

This is an action to foreclose a mortgage on certain real estate owned by *Vasil Nick,* upon which he had constructed a building designed to be occupied for business purposes. *Vasil Nick* was a member of the firm of *Nick Brothers,* comprised of *George Nick, Michael Nick,* and *Vasil Nick.* Said firm of *Nick Brothers* was engaged in the bakery busi-

ness.   The first floor of said building was designed to be used as a bakery, and bake ovens were built into the premises.   The building was constructed during the summer and fall of 1924.   During the construction of the building *Vasil Nick* found that he did not have sufficient funds to complete it and heat it during the winter of 1924–1925.   He arranged with the firm of *Nick Brothers* to use sufficient partnership funds to complete the building and keep it heated, and to protect it from damage by frost until it was occupied.   He agreed with *Nick Brothers* to lease to said firm the lower floor of said building, to be used and occupied as a bakery, for a rental of $150 per month, and agreed that the advances so made by the firm to said *Vasil Nick* should be applied upon the rental of said premises.   The money advanced by the partnership for such purposes amounted to $3,714.97. There seems to be no question that all of this money was used for the purpose of completing the building, improving the premises, and making them fit for tenancy.   The lease was to begin on the 1st day of May, 1925, and since said time the said premises have been so occupied by the said firm of *Nick Brothers.*

The mortgage involved in this action was executed on the 2d day of January, 1925.   *Vasil Nick* defaulted in the payment of taxes and interest according to the terms of the mortgage, and the instant action to foreclose said mortgage was commenced on the 18th day of November, 1925.   Immediate application was made for the appointment of a receiver for the premises and to collect the rents and profits thereof, and said receiver was appointed on the 7th day of December, 1925 ; and, among other things, was authorized, empowered, and directed to collect and receive all rents for said premises as of the 20th day of November, 1925.

*Vasil Nick* severed his connection with the firm of *Nick Brothers* on or about the 1st day of September, 1925, since which time it has been composed of *George Nick* and

*Michael Nick.* The receiver demanded payment of the rent for the premises occupied by that firm, which payment was refused. This refusal was reported to the court by the receiver, and after hearing, upon an order to show cause, and on the 25th day of January, 1926, the said *Nick Brothers* were by order of the court directed to pay the receiver rent for said premises so occupied by said firm at the rate of $150 per month. From the order so entered the firm of *Nick Brothers* brings this appeal.

For the appellants there was a brief by *Wheeler, Witte & Bark* of Milwaukee, and oral argument by *Lyman G. Wheeler.*

For the respondent *First Wisconsin Trust Company* as receiver there was a brief by *Miller, Mack & Fairchild,* and oral argument by *Paul R. Newcomb,* all of Milwaukee.

The following opinion was filed April 5, 1927:

OWEN, J. The question presented is whether the firm of *Nick Brothers,* having paid the rent in advance for a period of approximately two years from May 1, 1925, must pay it again to the receiver appointed in the foreclosure proceedings. The mortgage involved in this action did not pledge the rents and profits arising from the premises covered by the mortgage. It pledged only the premises as security. In this jurisdiction the mortgagor of real estate retains not only the legal title to the premises mortgaged but the right to the possession thereof. The mortgagor is at liberty to sell, rent, or to further incumber the premises, and such interest in the premises as he may grant to others is subject only to the mortgage. In the instant case the firm of *Nick Brothers* was charged with knowledge of the existence of plaintiff's mortgage, but it knew that that mortgage pledged only the real estate as security and did not pledge the rents and profits thereof. It knew that any interest which it might acquire in the premises was subject to the mortgage and

would be terminated when title to the property passed from the mortgagor upon a foreclosure of the mortgage. When it paid its rent in advance, the money so paid became the property of the mortgagor, free from any lien or incumbrance of any nature, and the payment of that rent amounted to the purchase of an interest in the real estate in the nature of a leasehold. True, this interest was subject and subordinate to the mortgage on the premises and would be terminated when the legal title to the premises passed from the mortgagor under foreclosure proceedings. Such foreclosure proceedings would effectually terminate its interest in the premises. But there is no principle of law which requires it to pay a second time for the interest so acquired to the mortgagee. The mortgagee certainly acquires no such right under the terms of the mortgage. Neither can we perceive how it arises as an incident to the power exercised by courts of equity under certain circumstances to appoint a receiver in foreclosure proceedings for the purpose of taking possession of the mortgaged premises, collecting the rents and profits, and applying the proceeds thereof upon the mortgage debt.

There is some confusion in the authorities concerning the circumstances under which a receiver may be so appointed. This is especially true in jurisdictions where the title to the property remains in the mortgagor, as in this state. At common law the title to mortgaged premises passed to the mortgagee, but as a second mortgagee was not entitled to the possession as against the first mortgagee, the practice grew up of appointing a receiver to impound the rents and profits of mortgaged property for the benefit of the second mortgagee. In 19 Ruling Case Law, p. 560, § 369, it is said:

"Originally, the practice of appointing a receiver to impound the rents and profits of mortgaged property seems to have grown out of the lack of a remedy at law on the part of persons having only equitable or second mortgages, who, in consequence, since they did not have the legal title, were not in a position to recover the possession of the mortgaged

premises in an action at law.  But, as equity would give effect to a mortgage only so far as to afford protection to the mortgagee, he could not enforce his right to the rents and profits in equity, unless he could show that the property itself was inadequate security.  Out of this enforcement, on equitable grounds, of a right incident to the mortgage itself and out of the hybrid theory prevalent in some jurisdictions that the mortgagee is to be regarded as owner so far as is necessary to keep him secure seems to have sprung the doctrine of so-called equitable lien on the rents and profits of mortgaged property, which courts of equity enforce by impounding them for the benefit of the owner of the mortgage when it appears that the property itself is inadequate to pay the debt and the mortgagor is insolvent.  It is sometimes provided by statute that a receiver may be appointed to take charge of the mortgaged property where the security is inadequate.  But irrespective of statute, it seems that the prevailing rule is that inadequacy of security and insolvency of the mortgagor are not in themselves regarded as sufficient grounds to justify the appointment of a receiver in foreclosure proceedings.  There must be shown some additional, distinct, equitable ground, such as danger of loss, waste, destruction, or serious impairment of the property, to warrant the appointment."

Clearly upon principle and, we believe, upon the weight of authority in jurisdictions where the legal title to the mortgaged premises remains in the mortgagor (note, 7 L. R. A. n. s. 1001), there is no warrant or authority for the appointment of a receiver in foreclosure proceedings merely because the security is inadequate or the mortgagor irresponsible.  The mortgagee has seen fit to loan money upon the security of the premises.  The statutes relating to the foreclosure of mortgages provide the manner in which he may realize from the security upon which he was content to rely.  There is no principle which in morals justifies a court in adding to the security which the mortgagee accepted at the time of making the loan.  The mortgagee is, however, entitled to have that security preserved, and protected from waste and dissipation.  Where the premises become

the subject of waste, the well known jurisdiction of a court of equity to prevent waste is aroused, and under certain circumstances a court of equity may interfere to prevent waste, to the end that the security may be preserved in its original value. This a court of equity does by the well established practice of the appointment of a receiver to take possession and manage the mortgaged premises. When the receiver so takes possession, whether there is any foundation for it in principle, it is well established that the rents and profits so collected by the receiver may be applied upon the mortgage indebtedness, even though such rents and profits have not been pledged as security for the mortgage debt by the terms of the contract between the parties. We do not attempt to vindicate this practice, but simply accept it as a thoroughly established principle of equity jurisprudence.

But the appointment of the receiver in the first instance can be justified only for the purpose of preventing waste in the exercise of the well established jurisdiction of courts of equity for that purpose. It may be that this requirement is occasionally overlooked by the courts and may be misunderstood by the bar. But a review of the cases in this court fails to reveal any case where a receiver has been appointed in foreclosure proceedings in the absence of circumstances amounting to waste. In this connection it should be noted that delinquent taxes and unpaid interest depreciate the value of the security and amount to waste. *Finch v. Houghton,* 19 Wis. 149; *Schreiber v. Carey,* 48 Wis. 208, 4 N. W. 124; *Morris v. Branchaud,* 52 Wis. 187, 8 N. W. 883; *Sales v. Lusk,* 60 Wis. 490, 19 N. W. 362; *Winkler v. Magdeburg,* 100 Wis. 421, 76 N. W. 332.

This discussion leads to the conclusion that one may deal with a mortgagor, pay for and acquire any interest in the mortgaged premises, and that interest so acquired will be subject only to the lien of the mortgage. If the mortgage covers only the premises and does not pledge rents and profits, the mortgagee has no interest whatever in the proceeds

arising from the purchase of a leasehold interest. The rights of a receiver appointed in foreclosure proceedings to the rents and profits arising from mortgaged premises are limited to those which become due after his appointment. One who acquires an interest in premises in the nature of a leasehold by paying his rent in advance cannot be required to pay it a second time to the receiver.

Respondents rely upon the case of *Gaynor v. Blewett,* 82 Wis. 313, 52 N. W. 313.. In that case rent was paid a year in advance, but it was not paid until after the foreclosure proceedings had been commenced and a *lis pendens* filed. It was held that the tenant stood in the position of a purchaser or lessee *pendente lite* and that he took subject to whatever order or decree the court might lawfully make affecting either the title or possession. The decision in that case is carefully grounded upon that fact. "The doctrine of *lis pendens* as to persons and property within its operation is that the court having jurisdiction of the suit or action is entitled to proceed to the final exercise of that jurisdiction, and that it is beyond the power of any of the parties to the action to prevent its doing so by any transfer or other act made or done after the service of the writ or the happening of such other act as may be necessary to the commencement of *lis pendens.*" 17 Ruling Case Law, 1009. The *Blewett Case* is no authority for the order here under consideration, and we can discover no principle or moral consideration which justifies the extension of the doctrine of the *Blewett Case* to the facts here involved. It follows that the order must be reversed.

*By the Court.*—So ordered.

The following order was filed July 22, 1927:

PER CURIAM. A rehearing having been granted in the above entitled cause upon questions to be stated, and the court desiring that the following questions shall be briefed

and argued, without any purpose to limit any other argument that may appear to counsel to be pertinent,—

It is ordered that the following questions be briefed and argued:

1. What was the effect at common law of a mortgage pledging the rents and profits arising from lands mortgaged?

2. Is the rule in such respect at common law affected by the rule obtaining in this state that the mortgagor retains the title and right of possession of the land mortgaged?

3. Is such rule affected by the various statutes of this state regulating the rights of mortgagors and mortgagees providing for a period of redemption, etc.?

The following opinion was filed October 11, 1927:

OWEN, J. (*on rehearing*). This case was decided on the assumption that the mortgage contained no clause pledging rents and profits. Upon motion for rehearing our attention was called to the fact that the mortgage did pledge "all of the rents, issues and profits which may arise or to be had therefrom." Our erroneous assumption arose from a misunderstanding that the absence of such clause was conceded upon the oral argument. It being apparent that what was said in the opinion was not in response to the true facts, a rehearing was granted, and counsel were requested to thoroughly brief the question of the effect of a clause pledging rents and profits in an ordinary real-estate mortgage. Our labors have been greatly facilitated by the able briefs presented on rehearing.

It seems to be universally recognized that the right to rents and profits follows the legal title and the right of possession. At common law, and in some jurisdictions in this country, a mortgage operates to convey the legal title to the mortgagee with the right of possession upon breach of the covenants of the mortgage. Originally this right of possession on the part of the mortgagee was enforced by eject-

ment, but this rule was changed by statute in England so that a mortgagee might have a receiver appointed whenever a condition of the mortgage was breached for some definite period of time. *Schreiber v. Carey*, 48 Wis. 208, 4 N. W. 124. Even at common law the mortgagee was not entitled to collect the rents and profits until possession was taken, and his right to collect the rents and profits followed as a matter of course from the possession, whether or not rents and profits were pledged by the mortgage; but the rents and profits were to be applied in the discharge of the debt, and the mortgagee was required to account to the mortgagor for the same.

In jurisdictions where the mortgagor retains the legal title and right of possession, as here, it follows that the right to collect rents and profits remains in the mortgagor until he is deprived of possession in the manner provided by law, and this notwithstanding the fact that the mortgage may pledge the rents and profits. This must be true unless the clause pledging rents and profits should be construed as sufficient to pass the legal title and right of possession to the mortgagee. This has never been held in any jurisdiction, and should not be, as it would afford an easy way of evading the policy of our statutes which makes a mortgage a mere lien upon land, leaving the legal title and right of possession in the mortgagor. It is plain in this jurisdiction that under a mortgage pledging rents and profits the benefit of such rents and profits does not inure to the mortgagee until possession has passed from the mortgagor. Under the principles established here, the mortgagor may not be deprived of possession except under circumstances discussed in the former opinion. In order to accomplish such dispossession the mortgagee must invoke the aid of a court of equity. Upon the application of the mortgagee the court may appoint a receiver to take possession of the premises to prevent waste and to collect rents and profits.

· It is generally stated in the cases that the receiver may be empowered to collect such rents and profits as accrue after his appointment. Notwithstanding the fact that it must frequently happen that the receiver is appointed during a term for which rent has been paid, there are few cases dealing with a controversy between the tenant and the receiver as to whether the tenant must pay rent again to the receiver for the unexpired portion of the term for which he has paid it to the mortgagor. Two such cases are to be found in the supreme court of New York, arising under a mortgage pledging rents and profits. In those cases the tenants were required to pay the rent again to the receiver. *Derby v. Brandt,* 99 App. Div. 257, 90 N. Y. Supp. 980; *Home Life Ins. Co. v. O'Sullivan,* 151 App. Div. 535, 136 N. Y. Supp. 105. In *First Nat. Bank v. Security T. & S. Bank,* 191 Iowa, 842, 181 N. W. 402, and in *Caldwell v. Alsop,* 48 Kan. 571, 29 Pac. 1150, 17 L. R. A. 782, a chattel mortgage on growing crops was given preference over a real-estate mortgage which pledged the rents and profits, even though the chattel mortgage was subsequent to the real-estate mortgage. All of the authorities agree that a pledge of rents and profits does not create any lien upon the rents and profits until the mortgagee acquires possession, and that all rents and profits paid to the mortgagor prior to taking possession by, or the appointment of, a receiver belong to the mortgagor. All authorities agree that a pledge of rents and profits vests in the mortgagee a right thereto which equity will recognize and enforce in a proper manner. As already stated, the only way in which it can be enforced in this state is by the appointment of a receiver under circumstances justifying such procedure.

In view of the fact that the mortgagee must invoke the aid of a court of equity to enforce his right to rents and profits, it seems manifest that a controversy arising between a tenant who has paid his rent in advance to the mortgagor

and· a receiver who is demanding a repayment of the rent
for the unexpired portion of the term for 'which it has al-
ready been paid to the mortgagor, should be determined by
the application of equitable principles: One of these prin-
ciples is that the plaintiff should come into court with clean
·hands. Another is that a court of equity seeks to do justice
and not injustice. . It is not disputed in this case that the
mortgagor arranged with *Nick Brothers,* a partnership of
which he was a member, to advance moneys to be credited
upon the rent of the partnership for the purpose of com-
pleting the building, making it tenantable and to preserve it
from the ·ravages of frost. As said in the brief for appel-
lants:

"Without the material and labor and money furnished by
the firm of *Nick Brothers* in payment for rent on lease of
the bakery, the building could not have been finished and
made to yield the very considerable income the receiver has
collected from tenants of the flats. The building would
have stood incomplete, damaged by frost, untenantable, and
without income, during all the period until after foreclosure
sale, had it not been for the advance of rent by the *Nick
Brothers,* who are appellants here."

The mortgagee now claiming the rent has already had the
benefit thereof. It added to his security. By reason of this
advancement the entire building has been placed in a tenant-
able condition, and the receiver is now collecting rents and
profits from other portions of the building which are being
applied to the plaintiff's mortgage. In the attempt to re-
collect the rent from *Nick Brothers* so advanced by them,
the mortgagee is seeking to enjoy the benefit of .the rent
again. This is not justice. It is not equity. It is oppres-
sion. If the rent had been paid, as it was in *Gaynor v.
Blewett,* 82 Wis. 313, 52 N. W. 313, to enable the mort-
gagor to circumvent the provisions of the mortgage and to
appropriate it to his own use, a different situation would
confront us. But where the mortgagee enjoys the full bene-
fit of the advanced payment, and it was made *in good faith*

and not for the purpose of working a fraud, a court of equity should not work oppression by requiring its payment a second time. We therefore hold that the order appealed from was unjust and inequitable, and should be reversed. Our former mandate will stand.