MANUFACTURERS SMALL BUSINESS INVESTMENT COMPANY OF CONNECTICUT, INC. *v.* EMPIRE AUTO BODY, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 6-655-19545

614

Argued February 25—decided April 18, 1966[1]

*Pasquale Young,* of New Haven, for the appellant (plaintiff).

*Arnold M. Potash,* of New Haven, for the appellee (defendant).

JACOBS, J. Joseph Glass, of New Haven, receiver, appointed by the Superior Court *(Loiselle, J.)* on November 24, 1964, in a foreclosure suit instituted by the plaintiff, assigned to the plaintiff a claim for rent in accordance with an order of the Superior Court dated April 30, 1965 *(Palmer, J.),* and now seeks in this action against Empire Auto Body, Inc., hereinafter referred to as the tenant, to compel it to pay the rent for the month of December, 1964. The affidavit attached to the plaintiff's motion for summary judgment recited that "on November 25, 1964 . . . [the receiver] made demand upon the defendant for the payment of the December 1964 rent, in the amount of $600, by registered mail . . .

---

[1] It was understood and stipulated by the parties in open court that, because Judge Kosicki was unavailable on February 25, 1966, the oral argument on the appeal would be heard by Judge Zarrilli and Judge Jacobs; however, it was fully understood that Judge Kosicki would participate in this opinion.

which [t]he defendant . . . has refused to pay . . . and the same is still owing in the amount of $600." The defendant's counter affidavit admits the tenancy in the mortgaged premises but asserts that "[t]he rent for December 1964 . . . was paid to one of the owners of record . . . , in advance, on November 17, 1964," and recites further that "notice of the appointment of Joseph Glass as receiver of rents . . . was not received by affiant until after the payment of the December rent on November 17, 1964."

The court, on motion of the defendant, rendered summary judgment for the defendant by means of a docket entry reading that the "rights and duties of [a] rent receiver, a creature of statute, do not commence until appointment. In [the] absence of fraud, reasonable prepayment is proper." In the assignment of errors, the claim is made that the plaintiff is not required, as a matter of law, to allege and prove fraud in order to recover; moreover, it is contended that "the rights and duties of rent receivers are not governed by statute."

"[C]ourts of equity will . . . , in a proper case, and as a general practice, appoint a receiver to collect the rents during the pendency of a foreclosure action." 2 Wiltsie, Mortgage Foreclosures (5th Ed.) § 561, p. 912; 2 Glenn, Mortgages §§ 173, 174; 3 Jones, Mortgages (8th Ed.) § 1930, p. 408; 59 C.J.S., Mortgages, § 340. "In many states there are statutes that provide for the appointment [of a receiver] at the discretion of the court in a foreclosure action where it is shown that waste is being committed or that the value of the property is insufficient to cover the debt." Comment, "Power of First Mortgagee to Secure Rents without Foreclosing," 43 Yale L.J. 107, 111 n.27, listing those states having such a statute; practically all of them

are "lien" states. In Connecticut, our courts will appoint a receiver, as an incident to a foreclosure action only upon persuasive equitable grounds. See *Melrose* v. *Industrial Associates, Inc.*, 136 Conn. 518, 522; *Silver* v. *Kingston Realty Corporation*, 114 Conn. 349, 350. But in our view of this case, the question of the rights and duties of a receiver has, through the sequence of events, become immaterial on this appeal.

The precise issue raised for determination was whether the court was justified, on the basis of the pleadings and the affidavits filed by the parties, in rendering a summary judgment for the defendant. See Practice Book §§ 303, 306. "In passing on the defendant's motion for summary judgment the trial court was limited to deciding whether an issue of fact existed, but it could not try that issue if it did exist. . . . If the affidavits and papers in the file (Practice Book § 299) raised an issue of law, it was not the province of the court to undertake conclusively to resolve that question; instead, it should follow the procedure provided by § 306 of the Practice Book and require the filing of pleadings formally presenting that issue." *Associates Discount Corporation* v. *Smith's Windham Lincoln-Mercury Sales, Inc.*, 153 Conn. 176, 180; see Stephenson, Conn. Civil Proc. § 131. There is no finding here and no memorandum of decision. The skimpy docket entry tells us very little. The judgment file merely recites that "[t]he court, having heard the parties, on a motion for summary judgment, finds the issues for the defendant."

Since it becomes necessary to remand this case to the trial court for further proceedings, consideration ought to be given to such cases as *First National Bank* v. *Gordon*, 287 Ill. App. 83, in which the tenant bank knew of the existence of the mortgage

on the property; it also knew that the mortgagor was collecting the rents and turning them over to a trustee to apply on the indebtedness; moreover, the tenant knew that a receiver might be appointed. And even more important, the tenant entered into a written agreement with the mortgagor for the cancelation of its lease after it had been served with notice for appointment of a receiver. On the basis of these factual determinations, the court held (p. 86): "While the law authorizes the mortgagor and his tenant to enter into agreements without the knowledge or consent of the mortgagee, yet such agreements are not without limitation. While a tenant under a lease from the mortgagor must pay his rent to the mortgagor, he cannot pay it in advance and thereby relieve himself from again paying it in case a receiver is appointed."

On the other hand, it may very well be that good faith adjustments between mortgagor and tenant are not open to attack. Thus, in *Grether* v. *Nick*, 193 Wis. 503, which came to be cited as a leading case, the court held that a prepayment of rent by a subsequent lessee was valid against a receiver in foreclosure and the tenant could not be made to pay again. The court was motivated in its holding because the mortgagor used the prepayments of rent in the maintenance or operation of the building. "This was the express rationale of *Grether* v. *Nick*, the prepaid rent having been used to complete a building on the mortgaged premises."[2] Osborne,

---

[2] "'Even this court [*Grether* v. *Nick*], however, would not protect a tenant who pays his rent in advance after the foreclosure is begun. And all the courts in the same group indicate that if an assignment of rent or the prepayment of rent or the execution of a lease upon an inadequate rental, are the result of a deliberate fraud and collusion to defeat the mortgagee, the transaction will not be permitted to prejudice the mortgagee.'" Osborne, Mortgages, p. 402 n.60, citing Berick, "The Mortgagee's Rights to Rents," 8 U. Cinc. L. Rev. 250, 275; see Allen, "Appointment of Receivers in Mortgage Foreclosure Actions," 16 Marq. L. Rev. 168.

Mortgages § 158, p. 401. Professor Glenn suggests that the reasoning in *Grether* v. *Nick* "is that the mortgagee's right to the rents is based on the idea that they add to his security; but if prepaid rents were sunk in the mortgaged premises themselves, then the mortgagee has the benefit of them, and it would be unjust enrichment for him to hold the tenant to a second payment." 2 Glenn, Mortgages § 183.1, p. 953. "[Professor] Glenn argued in his treatise on mortgages that the very fact of prepayment by a tenant was so 'abnormal' that the mortgagor's fraud should be imputed to the tenant even if the latter was subjectively innocent and that the only exception allowed should be where the money was used for upkeep of the building." Gilmore, "The Assignee of Contract Rights and His Precarious Security," 74 Yale L.J. 217, 249. *"Grether* v. *Nick* [supra] was also differentiated from the sort of case in which prepayments of rent were made to enable the mortgagor to appropriate them in fraudulent contravention of the rights of the mortgagee to them. *Gaynor* v. *Blewitt,* 1892, 82 Wis. 313, . . . was distinguished on this ground." Osborne, op. cit., p. 401 n.55.

The New York cases are more mortgagee oriented. "Certainly a fraudulent prepayment should not be valid and the broader rule of the New York cases hitting agreements that impair the mortgagee's security when made with notice is a desirable one." Osborne, op. cit., p. 402. Thus, in *Prudence Co.* v. *160 W. 73d St. Corporation,* 260 N.Y. 205, the defendants bought apartments in premises subject to a mortgage, under a cooperative ownership plan which included an agreement whereby they were required to pay each month certain fixed charges. In an action to foreclose the mortgage, a receiver of rents and profits was appointed. He moved to raise the charges. It was held (p. 212), in denying

the motion, that to permit the receiver to collect "reasonable" rental would give the mortgagee more than his bargained-for security. But the court went on to say (p. 213): "What we have said must not be accepted as an indication that an order appointing a receiver of rents and profits may be frustrated by a collusive or fraudulent lease for an inadequate rental *or advance payment of rent in anticipation of a foreclosure action.* We are considering rights acquired under an agreement not attacked because of fraud." (Italics supplied.) See *Bank of Manhattan Trust Co.* v. *571 Park Ave. Corporation,* 263 N.Y. 57; *Colter Realty, Inc.* v. *Primer Realty Corporation,* 262 App. Div. 77 (N.Y.) ("summarizing *Bank, etc. Co.* v. *571 Park Ave. Corp.,* 1933, . . . [supra], and holding that the same reasoning invalidated a prepayment arrangement under a lease subsequent to the mortgage in which there was a pledge of the rents, the prepayment occurring before the receiver was appointed and, therefore, before the pledge became operative" [Osborne, op. cit., p. 400 n.52]).

Our discussion of the cases and the authorities shows that substantial and important triable issues are raised by the pleadings and the affidavits. It thus becomes necessary for the trier of facts to find what the facts are and to evaluate these facts in terms of legal consequences. It has been held that a summary judgment should be denied "even where there is no dispute as to the evidentiary facts . . . but only as to the conclusions to be drawn therefrom." *Pierce* v. *Ford Motor Co.,* 190 F.2d 910, 915. "All courts agree that the party moving for summary judgment has the burden of showing the absence of any genuine issue and that the material on file should be viewed in the light most favorable to the adversary. They agree also that summary judgment should be denied wherever a directed

verdict would be denied if the evidence at trial stood in the same posture as the material on file upon the motion. The difference comes when the converse of this proposition is involved. Some judges and commentators believe that summary judgment is proper wherever a verdict would be directed 'on the record the parties have actually presented, not on one potentially possible.' Others believe that summary judgment should be denied whenever the record presented indicates the possibility that new or different evidence might turn up on trial." James, Civil Procedure § 6.18, p. 235. "We take this occasion to suggest that [Circuit Court] trial judges should exercise great care in granting motions for summary judgment. A litigant has a right to a trial where there is the slightest doubt as to the facts, and a denial of that right is reviewable; but refusal to grant a summary judgment is not reviewable. Such a judgment, wisely used, is a praiseworthy time-saving device. But, although prompt despatch of judicial business is a virtue, it is neither the sole nor the primary purpose for which courts have been established." *Doehler Metal Furniture Co.* v. *United States,* 149 F.2d 130, 135.

Were we sure that on the state of the record the ultimate legal result is clearly indicated, we would neither deny nor postpone judgment. It is our opinion that we ought not to assume responsibility of decision now. See *Arnstein* v. *Porter,* 154 F.2d 464, 480 (dissenting opinion).

There is error, the judgment is set aside and the case is remanded to be proceeded with according to law.

In this opinion KOSICKI and ZARRILLI, Js., concurred.